## G. F. MILLER v. JAMES D. SULLIVAN.

No. 15,306.   (94 Pac. 266.)

SYLLABUS BY THE COURT.

1. LANDLORD AND TENANT—*Breach of Covenant to Repair—Measure of Damages.* The general rule is that on a breach of the covenant by the landlord to make repairs the measure of damages is the difference between the rental value of the premises as they were and what it would have been if they had been put and kept in repair.

2. ———— *Notice of Defects — Ineffectual Effort to Repair — Damages.* The foregoing rule is not of universal application, and where the tenant gave seasonable notice to the landlord, and the landlord made continual, although ineffectual, efforts to repair, the tenant may recover for damages to goods in his storeroom on the leased premises, when the extent of such damage is shown with reasonable certainty, all vague and speculative claims being withdrawn.

Error from Shawnee district court; ALSTON W. DANA, judge.   Opinion filed February 8, 1908.   Affirmed.

*George E. Overmyer*, for plaintiff in error.
*Edwin A. Austin*, for defendant in error.

The opinion of the court was delivered by

BENSON, J.: This controversy is over the measure of damages for the breach of a covenant of G. F. Miller, the lessor, to make repairs, whereby a stock of pictures, picture-frames and mouldings in the leased premises, belonging to James D. Sullivan, the lessee, were injured by rain descending through a defective roof, which the lessor had agreed to keep in repair.   The court instructed the jury that they might allow the plaintiff to recover the difference between the reasonable value of the goods before and after the injury. The defendant contends that the diminution in the rental value consequent upon the failure to repair is the true measure of damages.

Miller v. Sullivan.

The lease was of a storeroom for a term of two years. When the first heavy rains came leaks appeared in the roof, causing damage to the lessee's goods, of which due notice was given. The lessor promised to, and did, make repairs, but they were not effective; and subsequent rains showed other leaks, causing further damage, and this continued during the lessee's occupancy. Whenever leaks appeared notice was given and efforts were made to repair, but the repairs were unavailing. About six months before the term expired the lessee commenced an action to recover such damages, having, soon after the first damage occurred, presented a bill therefor, which the lessor refused to consider. A supplemental petition was filed, including claims for further damages. The tenant paid his rent promptly, and gave proper notices of the defects as they appeared, and the landlord appears to have made efforts to repair whenever notified. Whether the failure to stop the leaks was because the roof was too old and dilapidated to admit of successful repair or whether the repairs were improperly made does not clearly appear, but whatever the reason may have been they were unavailing.

Evidence was offered showing the losses and injuries to the goods, and their consequent diminution in value. No objection was offered to this testimony, and the case appears to have been tried upon the theory that such resulting loss afforded the true measure of damages. To the instruction of the court, however, that this was the proper measure of damages the defendant excepted, and this presents the question to be determined.

The general rule is that on a breach of the covenant by the landlord to make repairs the measure of damages is the difference between the rental value of the premises as they were and what it would have been if they had been put and kept in repair. (24 Cyc. 1097; *Cook v. Soule et al.,* 56 N. Y. 420; *T. H. E. Co. v. D. L. I. Co.,* 144 N. Y. 34, 39 N. E. 7.)

This rule, however, is not of universal application.

Thus, in *Culver v. Hill,* 68 Ala. 66, 44 Am. Rep. 134, it was held that where the landlord agreed to keep fences in repair the tenant had the right to rely upon his performance, and could recover for the destruction of crops resulting from his failure so to do. In Indiana it was held that, upon the breach of a covenant of the landlord to repair, the tenant may make the repairs and charge the landlord therewith or he may rely upon the covenant and recover all damages flowing from the breach. (*McCoy v. Oldham,* 1 Ind. App. 372, 27 N. E. 647, 50 Am. St. Rep. 208.) In that case the covenant was to clear a part of the land, and the court approved the rule allowing the diminution in rental value as the measure of damages, saying that this is ordinarily the measure of recovery. In *Parker v. Meadows,* 86 Tenn. 181, 6 S. W. 49, it was held that the diminution in rental value was the proper measure of damages where the landlord had failed to build new fences upon the leased lands, as he had agreed to do, but the court said:

"We do not wish to be understood as intimating that there are not cases where the failure of the landlord to repair, where he has contracted so to do, may not render him liable for injury to crops or other property of the tenant, even to the point of special and consequential damages that are not remote, and are shown with sufficient certainty, the well-established general principles being equal to the emergencies of particular cases, though often difficult of application." (Page 188.)

Where the lessor had covenanted to clean out certain ditches on the leased premises, and failed to do so, he was held liable for the diminution in value of the crops caused by such default. (*Spencer v. Hamilton,* 113 N. C. 49, 18 S. E. 167, 37 Am. St. Rep. 611.) It was said in the opinion that the damages thus allowed were "immediate, necessary and reasonably certain, and such as were in the contemplation of the parties." (Page 52.) In a case in New York, where household effects were injured because of a defective roof, which the

owner had covenanted to repair, the court sustained a recovery, saying:

"On two occasions, when the roof leaked, she had called defendant's attention to its condition, and he told her that he would have it fixed; and plaintiff, in reliance on defendant's promise, was induced to remain and continue her tenancy. She was justified in assuming that defendant had fulfilled his promise, and was ignorant that the roof was in a defective condition till the storm came which produced the damage complained of. Under these circumstances, we think that the defendant became liable for the damages suffered by plaintiff, for it was in consequence of his failure to put the roof in proper repair, as he agreed to do, that plaintiff was damaged. That defendant failed to properly repair the roof is, we think, abundantly shown by its utter insufficiency to shield plaintiff's property from the storm of February 22." (*Phillips v. Ehrmann*, 28 N. Y. Supp. 519, 520.)

It is true that in this case the plaintiff knew of the defective condition of the roof from past experiences, but after each rain the landlord essayed to repair it, and he is not in a position to say that his tenant ought to have known that he could not, or would not, do that which he thus undertook to do. Damages for the breach of a contract should be such as may fairly and reasonably be considered as arising naturally—that is, in the usual course of things—from such breach; such as may reasonably be supposed to have been in the contemplation of the parties. (Note to *Spencer v. Hamilton, supra,* in 37 Am. St. Rep. 611.) The party who makes default should pay such damages as fairly result from his failure, when proof is reasonably certain and definite, and not vague or speculative. (3 Suth. Dam., 3d ed., § 874; *Kohne v. White,* 12 Wash. 199, 40 Pac. 794.) The damages here consisted in the loss and injury to certain pictures, picture-frames, and moulding, and were shown with reasonable certainty by the testimony and by the production of samples of the injured goods before the jury; all vague

and speculative claims were withdrawn, and the case was fairly presented to the jury.

It is argued that the plaintiff should have made the repairs himself. It has often been held that, where the repairs are slight and inexpensive, and the consequences of a failure serious, the tenant may make the repairs and charge the cost to the owner. Again, it is argued that the tenant should have moved out, and not remained to suffer continued loss, and authorities are not wanting to show that such is the tenant's duty in some cases. Neither of these rules apply here. The tenant was not required to attempt these repairs when the landlord was himself endeavoring to make them. For the same reason he was not required to move out. The owner, both by his promises and conduct, invited the lessee to remain. If the owner intended to remedy the defect, as his efforts indicated, the tenant cannot be charged with knowledge that such efforts would be unavailing. In such a situation the tenant was neither bound to make the repairs himself nor to move out. (*Keyes v. Western Vt. Slate Company,* 34 Vt. 81; *Rauth v. Davenport,* 67 N. Y. Supr. Ct. 70, 14 N. Y. Supp. 69; *Vandegrift, Adm'r, v. Abbott,* 75 Ala. 487.) The tenant was, however, bound to make all reasonable efforts to protect his property, and the court so instructed the jury. It is not shown that he was negligent in this respect.

The judgment is affirmed.