No. 21,133.

ELLA MURRELL, *Appellee,* v. MARY E. CRAWFORD, *Appellant;* et al.

### SYLLABUS BY THE COURT.

1. LANDLORD AND TENANT—*Breach of Covenant to Repair—Measure of Damages.* "The general rule is that on a breach of the covenant by the landlord to make repairs the measure of damages is the difference between the rental value of the premises as they were and what it would have been if they had been put and kept in repair." (*Miller v. Sullivan,* 77 Kan. 252, syl. ¶ 1, 94 Pac. 266.)

2. SAME—*Personal Injuries.* The ordinary rule is that an award of damages for a landlord's breach of covenant to repair a dwelling house is not extended to include a liability for personal injuries sustained by the tenant in the use of the unrepaired property.

3. SAME—*Breach of Covenant to Repair—Damages Which Could Have Been Averted—Not Recoverable.* Where a landlord has agreed to repair the porch of a dwelling house and fails to do so, a tenant who knows of the defective condition of the porch and continues to use it for several months cannot recover special damages for a consequent injury when by a slight outlay she might have remedied the defect and averted the injury, and could have charged such outlay to the landlord against the rent then due and unpaid.

4. SAME—*Breach of Covenant to Repair—Injuries—Contributory Negligence.* Where a tenant knows that the porch of a dwelling house is defective and in need of repair but continues to use it for several months, and is injured thereby, she is guilty of such contributory negligence as will bar a recovery for such injuries, notwithstanding the landlord had promised to repair the porch but failed to do so.

Appeal from Shawnee district court, division No. 1; ALSTON W. DANA, judge. Opinion filed December 8, 1917. Reversed.

*J. B. Larimer,* and *W. Glenn Hamilton,* both of Topeka, for the appellants.

*Tinkham Veale,* of Topeka, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: This was an action for damages by a tenant against her landlord and the agents of the landlord for injuries sustained through the breaking of the floor of the front porch of a one-story dwelling house. The petition alleges that about April 1, 1915, the plaintiff and her daughter, at the request of the agent of the defendant, investigated the property for the purpose of renting it for a dwelling house, and thereafter called at the office of defendant's agents—

"And stated to W. C. Stephenson [agent] that the property above described was badly in need of repair, but that they would rent the same from the said defendants, [landlord and her agents] if the defendants would immediately put the property in good repair. . . . That the said W. C. Stephenson acting as agent for the defendant Mary E. Crawford, on or about the third day of April, 1915, leased the house to the said plaintiff and her daughter for a dwelling house from month to month, and at the same time he covenanted and agreed with the plaintiff and her daughter that they would immediately repair the property so that it would be in good, safe and tenantable condition, and requested and induced the said plaintiff and her daughter to move into the said house above referred to on his promise and representations that Mary E. Crawford, his principal, would immediately repair the said house and put it in good, safe and tenantable condition. That at this time the plaintiff and her daughter advised W. C. Stephenson, agent of Mary E. Crawford, that the porches on the said house were in a bad and dangerous condition; . . . that the plaintiff and her daughter relying upon the promise and representations of the said W. C. Stephenson, agent of the defendant, Mary E. Crawford, the owner of the said property, that they would immediately repair the said porches and put them in good, safe and tenantable condition, moved into the said dwelling house and began to use the same as a dwelling house. . . .

"The plaintiff further alleges that she and her daughter continued to occupy the said house as a dwelling house continuously up to about the 29th day of October, 1915. . . .

"The plaintiff further alleges that the defendants neglected, failed and refused to repair the said porches until after the plaintiff's injuries hereinafter complained of. That on or about the —— day of September, 1915, while the plaintiff was still in the lawful possession of the said property as the tenant of the said defendants and in the peaceful enjoyment of the same, the plaintiff while walking on the front porch of the said dwelling house in a reasonable manner, fell through on account of its deteriorated, rotten and worn out condition, and thereby received dangerous and painful injuries. . . .

"The plaintiff further alleges that the said deteriorated, rotten and defective condition of the porch on the said house above referred to was

permitted to remain in such deteriorated, rotten and defective condition with the full knowledge and consent of the defendants herein over a long period of time and after repeated requests on the plaintiff's part to have the said property repaired and repeated promises on the defendants' part to repair the same."

Proper answers were filed and the cause was tried to a jury. The plaintiff testified that after she had examined the house with a view to renting it she told the agent that the porch needed repairing.

"Q. What did Mr. Stephenson say, if anything, about repairs? Just state what he said about repairs, if anything. A. Why, when we went to pay him the first month's rent, I told him we would take the house if he would repair it. He said he would; move right in the next day and he would send a man right down to repair it. I told him the porches were leaning and looked like they were about in need of repair.

"Q. You mean the porch posts, A. Yes; kind of slides to the front. It seemed like it would settle down and need to repair it underneath. It looks fairly stout on top. . . . And it was kind of rotted—punk and cracks where it came together on the top.

"Q. You said Mr. Stephenson said— A. He said he would send a man down and repair the house right away—for me to move in.

"Q. Did you move in relying upon those promises? A. Yes, sir, the next day.

"Q. Did he repair the porch, to any extent, at all? A. No, sir.

"Q. Did he make any repairs on it? A. No, he did not repair it at all.

"Q. How long was it, after you moved in, before you had any of the boards there in the porch give away? A. Well, we moved the 3d of April and this was the 3d day of September that I fell through the porch.

.  .  .  .  .  .  .  .  .  .  .  .  .  .

"Q. You especially called his attention to the porches? A. Yes, sir.

"Q. How did you happen to do that? A. I seen it looked old and looked like it needed repairs.

"Q. Did you personally have any further conversation with Mr. Stephenson? A. Yes, I spoke to him once when he was down looking around the place. . . .

"Q. That was before the accident? A. Yes, sir.

"Q. How long before? A. It was about a month, I think, before."

The jury returned a verdict for plaintiff for $330 and answered certain special questions, finding that defendant's agents had authority to make repairs, that before plaintiff moved into the house they promised to repair the porch, that the porch was in a dangerous condition on the day of the accident, and that the porch had not been repaired.

Murrell v. Crawford.

Other special questions were answered:

"1. Did the plaintiff, prior to the renting of the house in question, notify Stephenson & Webb, or either of the firm, that the porches were in a defective, bad or dangerous condition?   Answer: Yes.

.    .    .    .    .    .    .    .    .    .    .    .    .    .    .

"12. Was not the porch, on which plaintiff claims to have been injured, used by herself and the other occupants of the house, regularly from about the third day of April, 1915, until the third day of September, 1916?   Answer: Yes.

"13. Did not the plaintiff know, or have as good opportunity to know, the conditions of the porch, prior to the time she claims she was injured, as did the defendants?   Answer: Yes."

The principal errors assigned relate to the instructions given and refused.   The trial court gave the following:

"6. . . . if you further find that at the time in question the defendant Stephenson agreed to repair the porch but failed to do so and that plaintiff while in the exercise of reasonable care for her own safety, suffered the injuries complained of by reason of such failure to have the porch repaired, then the defendant Mary E. Crawford would be liable for such injuries as the evidence shows that the plaintiff sustained. . . ."

Defendant contends that the instruction just quoted is not a correct statement of the law.   Her counsel requested an instruction, refused by the court, which reads:

"10. You are instructed that, even though you do find from the evidence in this case that Stephenson & Webb had authority to, and did, agree to repair the premises in question, the plaintiff cannot recover for her injuries, if any, sustained by the defective conditions of the premises, unless such repairs were made, and the defendants were negligent in making such repairs."

It has frequently been decided that where a landlord attempts to make repairs on property, but only does so in an imperfect or ineffectual manner, and where the tenant relying upon such attempts to repair continues his tenancy and is injured thereby, an action for such injuries will lie in his behalf against the landlord.   It has also been held that where the landlord knowingly conceals or keeps secret, dangerous defects which are likely to injure a tenant or a member of his household, and an injury results, the landlord's wrongdoing is tortious and he is liable in damages therefor.   (*Moore v. Parker,* 63 Kan. 52, 64 Pac. 975, 53 L. R. A. 778 and note; *Miller v. Sullivan,* 77 Kan. 252, 94 Pac. 266; *Wells v. Hansen,*

97 Kan. 305, 154 Pac. 1033: *Rull v. Rainey,* 99 Kan. 57, 160 Pac. 1016.)

On the other hand, it is settled law that a landlord is not liable in damages as for a tort for a tenant's injuries sustained through the landlord's total failure to make promised repairs.

In such case the landlord's liability is only for the breach of his covenant to repair, and this liability is measured by the difference in the rental value of the leased property unrepaired from its agreed rental value if the promised repairs had been made. If the repairs would cost but little, the tenant may make them himself and offset the expense aganst the rent. In this instance it cost about $7 to make the repairs. The rent was $10 per month and it was then two months past due and unpaid at the time of the accident. The landlord's failure to comply with his covenant to repair is likewise ground for rescission and termination of the tenancy. But personal injuries are almost uniformly considered by the courts to be too remote to be included in an action for breach of covenant to repair. Loss of life or limb is not a natural and probable consequence which ordinarily and reasonably could be anticipated from a breach of covenant to make repairs on a dwelling house. This is the doctrine of practically all the textbooks and it is supported by a plethora of decisions. (*Miller v. Sullivan,* 77 Kan. 252, 94 Pac. 266, 15 Ann. Cas. 561; *Anderson v. Robinson,* 182 Ala. 615, Ann. Cas. 1915D, 829; *Dustin v. Curtis,* 74 N. H. 266, 13 Ann. Cas. 169; *Davis v. Smith,* 26 R. I. 129, 3 Ann. Cas. 832; *Thompson v. Clemens,* 96 Md. 196, 60 L. R. A. 580; 18 A. & E. Encycl. of L. 234; 16 R. C. L. 1059; 3 Joyce on Damages, 1942; Jones on Landlord and Tenant, p. 675, § 592; 2 McAdam on Landlord and Tenant, 4th ed., p. 1316, § 386; 1 Tiffany, Landlord and Tenant, 574, 592, §§ 86, 87; 2 Underhill on Landlord and Tenant, 859.)

(See, also, Notes, 11 L. R. A., n. s., 504; 34 L. R. A., n. s., 798, 804; 48 L. R. A., n. s., 917.)

In *Hamilton et al., Executors, v. Feary,* 8 Ind. App. 615, affirmed in 140 Ind. 45, where a recovery for personal injuries sustained by a tenant was denied, the general rule touching a landlord's liability for breach of covenant to repair was discussed:

"In this respect the rule is not different from what it would be if the contract to repair had been between the tenant and a mechanic or work-

man employed by her to do the work. The only damages recoverable in such case would be the difference between the price agreed upon and the actual cost of the work if the employer had hired another to do it, and possibly such other damages as were sustained by reason of the delay." (p. 620.)

It seems therefore that the criticised instruction of the trial court was clearly erroneous, and some such instruction as the one requested or involving the principle discussed above should have been given. This conclusion will necessitate a reversal of the judgment; but it still remains to be determined whether a new trial may be awarded or whether judgment should be ordered.

The only notice of the defect in the porch which the landlord had was the information which the plaintiff tenant says she gave to the landlord's agents when she inspected the dwelling house with a view of renting it. She could impart no knowledge of the defective porch to the landlord except such knowledge as she herself possessed. Nevertheless, knowing the defective condition of the porch, and notwithstanding the landlord's continued failure to comply with her covenant to repair, the tenant occupied the premises and used the porch for several months.

"12.    Was not the porch, on which plaintiff claims to have been injured, used by herself and the other occupants of the house, regularly from about the third day of April, 1915, until the third day of September, 1916? Answer: Yes.

"13. Did not the plaintiff know, or have as good opportunity to know, the condition of the porch, prior to the time she claims she was injured, as did the defendants? Answer: , Yes." (Jury's special findings.)

In view of these findings, under the most elementary notions of justice, it must be held that the continued use of the porch for these five months, knowing of its defective condition, was such contributory negligence on the part of plaintiff as to bar any recovery whatever for her personal injuries. (*Atkinson v. Kirkpatrick*, 90 Kan. 515, 519, 135 Pac. 579; 16 R. C. L. 1057-1058.)

Plaintiff made some effort to avoid this logical consequence by some evidence tending to show that the upper sides of the porch boards were seemingly in such fair condition as might justify her in believing the floor was safe enough for use.

That is inconsistent with plaintiff's pleading; and, moreover, the landlord could not be held liable for latent defects in the porch floor—her information on the subject being limited to what the plaintiff had given to defendant's agents. Thus plaintiff's case entirely fails.

It follows that the judgment of the district court must be reversed with instructions to set aside its judgment and to enter judgment for defendant, and it is so ordered.