No. 28,614.

Ascencion Garcia, by Maria Garcia, Her Guardian and Curator, *Appellee,* v. The Slater-Breitag Yeamans Motor Company, *Appellant.*

(278 Pac. 23.)

Opinion filed June 8, 1929.

*David F. Carson,* of Kansas City, for the appellant.

*W. W. McCanles* and *F. M. Kennard,* both of Kansas City, Mo., for the appellee.

The opinion of the court was delivered by

Dawson, J.: This was an action on behalf of a six-year-old girl who was injured on a public street in Kansas City, Mo., by being knocked down by an automobile driven by an employee of the defendant.

Plaintiff's petition alleged negligence in various particulars. Defendant's answer contained a general denial, and alleged contributing negligence on the part of the child's mother in permitting so young a child as plaintiff to be on the public street at the time and place without care, control or attention.

Jury trial; special findings and general verdict for $5,000 in favor of plaintiff; judgment accordingly.

Defendant contends that various errors inhere in the judgment, among which we note the following:

It developed at the trial that plaintiff was the daughter of a Mexican named Castro and that she herself had attended school bearing the name of Chona Castro. Plaintiff's father and mother had separated and the latter went by the name of Maria Garcia and had gotten herself appointed guardian and curator for the plaintiff in a Missouri court, and had given the child her own patronymic, Garcia, whereby, as defendant contends, it was completely misled and prevented from making any investigation of the facts of the case previous to the trial. However, defendant did not ask for a continuance when this incident developed. Moreover, there was no real dispute about the child being knocked down and her leg broken by a driver of defendant's automobile at the intersection of Twenty-fourth and Holly streets, in Kansas City, Mo. Both parties called Jesse J. Lambert, the driver, and he gave his version of the accident and testified that he called a doctor for the child and notified the police. An official of the defendant company also appeared on the scene of the accident before the child was taken to a hospital, and if he had been so disposed or concerned he could have kept in touch with the doctor, and would not have lost trace of the injured child—whatever name she might have.

Another incident developed at the trial was the fact that one Jones, a lawyer in plaintiff's employment, accompanied the child to the offices of three doctors who were appointed by the court to examine her physical condition. He told the doctors that they were expected to examine the child's leg. The record reads:

"I am a lawyer. I am connected with McCanles and Kennard. I was down to these doctors when they examined this girl, practically there all the time. I supposed I was supposed to. I took them down there.

"Here an objection was made for the reason that it is misconduct of counsel for them to do that. A motion was made to dismiss the jury on account of misconduct of counsel.

"THE COURT: I don't see what this has got to do with the jury.

[COUNSEL FOR DEFENDANT]: "It has got lots to do with it.

"THE COURT: Well, of course, he probably should not have been there present at the time of the examination. If that is all that occurred, I don't see that it cuts very much figure.

"Q. Well, you stayed there during the entire time of the examination? A. Yes, sir.

"Q. And you told them what to examine? A. Showed them what there was to be done. All they wanted and pictures of the leg taken. I was there while they were taking the X-ray picture.

[COUNSEL FOR DEFENDANT]: "I ask your honor to appoint another commission to examine this child.

"THE COURT: Well, I don't think I want to do that. I don't think it really affects the commission at all. This commission of doctors won't be affected that way—by that.

"Q. And you directed them to examine the girl? A. I asked them—they asked what was to be done, and I told them about the leg.

"Q. Is that all you told them? A. I told them that she had a pain in her body and her head, but they didn't examine that at all.

[COUNSEL FOR DEFENDANT]: "I ask to have the commission discharged and another examination made of this girl out of the hearing and direction of plaintiff's counsel.

"THE COURT: It will be denied at this time. Of course, if it is shown that that had any effect upon the commission, we can proceed later."

In this connection defendant calls attention to plaintiff's petition, which alleged that she sustained all sorts of injuries because of the negligence of defendant's driver:

"That because of all of said negligence plaintiff was struck by said automobile, and was injured as follows:

"She received a concussion and contusion of her brain and of her spinal cord; bruises, cuts and lacerations on her head, ears, face, neck, shoulders, arms, sides, body, hips, legs, knees and feet; a compound comminuted fracture of her right leg in and near the knee, breaking the bursæ in plaintiff's right knee joint; fracturing plaintiff's skull, greatly wrenching, twisting and misplacing the bones of plaintiff's spine, causing soreness, inflammation, abscesses, adhesions and growths in plaintiff's back and right knee; greatly shocking, injuring and impairing her nerves and central nervous system, so that as a direct result thereof her vital organs, including her brain, lungs, heart, intestines, stomach, liver, kidneys and ductless glands, fail to properly perform their natural functions, and are slow and sluggish in their movements; causing a slowness in the growth of plaintiff's skull, so that the growth and development of her brain is checked, causing mental disturbances, aberration and incoherence of her brain activity; causing plaintiff's respiratory, digestive and assimilative processes to be greatly interfered with so that the growth of plaintiff's body is checked, causing plaintiff to suffer and will ever after cause her to suffer great physical pain and mental anguish."

Defendant argues that because of these sweeping and all-inclusive allegations of injury defendant had no reason to concern itself more about the injury to plaintiff's leg than to the multifarious other but apparently fictitious injuries alleged in the petition, and that it had a right to have a comprehensive examination made of the child, and defendant alleges that Jones' statement to the doctors tended to mislead them and to induce them to limit their investigation to the extent of the injury to plaintiff's leg, and that if Jones had not meddled with the investigation the doctors would have discovered

that the child was undernourished, tubercular and afflicted with the rickets, and that the affliction which caused her right leg to be slightly crooked and shorter than her other leg was merely the result of a "green stick" fracture and her subnormal physical condition.

Touching this incident, it would be rather drastic to hold that the statement of Jones to the doctors prevented them from giving the plaintiff a thorough physical examination. Whether the youngster's subnormal condition, if such was the fact, was insufficiently brought out, and whether that should have constrained the granting of a new trial, will be considered below with the other matters urged in that behalf.

Error is assigned on alleged misconduct of plaintiff's counsel in his argument to the jury touching the fact that defendant's driver had called the police. He argued thus:

"Why did he call the police?

"It was a guilty heart or he would not call them.

[COUNSEL FOR DEFENDANT]: "Objected to for the reason that the law of Missouri requires persons driving to remain at the scene of an accident.

[THE COURT]: "Counsel for plaintiff has a right to comment on that and draw any inference that he wishes to."

This sort of argument by plaintiff's counsel cannot be commended—if it did not amount to downright pettifogging; but neither it nor the court's ruling thereon rose to the gravity of reversible error.

It is also contended with considerable plausibility that the verdict of $5,000 was excessive—a contention which might be difficult to refute—but a careful scrutiny of the record fails to disclose that this point was squarely raised or seriously pressed in the trial court. It was not specified as one of the grounds upon which a new trial was asked, and indeed it does not now appear in defendant's specifications of error presented for appellate relief. In consequence error based on the excessive verdict is not subject to our review. (*Toops v. Atchison, T. & S. F. Rly. Co.*, 128 Kan. 189, syl. ¶ 3, 277 Pac. 57, decided May 4, 1929.)

Error is urged on the overruling of defendant's motion for a new trial, in support of which the doctors who had served on the commission deposed that they had only examined the plaintiff's injured leg, but that she also showed symptoms of rickets or tuberculosis, and if a complete physical examination would disclose that she was suffering from such disease "it might change their testi-

mony regarding curvature of the injured leg." The school hygienist made affidavit that the roots of the child's teeth were exposed, that she was manifestly undernourished and could not masticate her food, and that she had received no report or complaint that the child had a broken leg or had been injured. The principal of the school deposed to the same effect. Two Mexican women, acquaintances of plaintiff and her mother, made affidavits to the effect that the child was lame before she was knocked down by the defendant's automobile, that she had formerly sustained a broken leg in Texas, and that she was suffering from tuberculosis and was ailing with some sort of affliction of the leg bone.

It may be admitted that these affidavits made a somewhat persuasive showing in behalf of the defendant's motion for a new trial, but in the last analysis the controlling question before us is whether it was clearly established in the trial court that this array of facts or of evidence could not have been brought together for use in the trial by the exercise of diligence on the part of defendant. Defendant's investigator testified that he did not know of the Mexican witnesses until after the trial; he did not know where the child went to school or whether she went to school; and that he had been unable to find any witness who had seen the accident. But to what extent this investigator had exerted himself to discover these witnesses or the facts about which they testified does not appear. When a person is subjected to a lawsuit for damages he cannot safely let matters drift until the trial and then complain that he knew nothing of the facts developed in evidence and only then bestir himself to search for witnesses and evidence to obtain a new trial. The trial court quite fairly may have concluded that defendant's showing of diligence was disproven by the circumstances, and quite fairly may have concluded that defendant's strategy in this case was largely confined to making the most of whatever weaknesses in plaintiff's case might develop in the progress of the trial rather than on the diligent accumulation of evidential facts on its own behalf to withstand plaintiff's cause of action. Furthermore, the doctors' affidavits did not positively aver that plaintiff was afflicted with rickets or tuberculosis; they went no further than to say that *if* a complete examination should reveal such a condition it *might* change their testimony regarding the curvature of plaintiff's leg. Certainly a new trial is not demandable as a matter of right on a mere showing of

what·"might" be the testimony "if" certain suggested facts should be revealed as true.

A final error is predicated on the trial court's refusal to instruct the jury that because of the plaintiff's age it was the duty of her parents or guardian to care for her in proportion to the danger of her surroundings, and that if her parents or guardian were negligent in that respect and that negligence contributed to her injury plaintiff could not recover. There is no such law. If the parents were suing in their own behalf some such instruction might have been proper and pertinent. (*Howard v. Scarritt Est. Co.,* 267 Mo. 398.) But no matter who may have contributed jointly or concurrently with defendant to the plaintiff's injury, plaintiff being too young to have such negligence attributed to herself, defendant was not thereby relieved of liability for its driver's negligence and the consequences thereof.

The other matters urged on our attention suggest nothing for further discussion. There is no error in the record of sufficient gravity to overthrow the judgment, and it must therefore be affirmed. It is so ordered.