No. 42,204

DONALD WILLIAMS, a Minor, by and Through His Mother and Next Friend, LULA WILLIAMS, *Appellant,* v. A. PORTER DAVIS and HAZEL DAVIS, *Appellees.*

(362 P. 2d 641)

Opinion filed June 10, 1961.

*Barton P. Cohen,* of Kansas City, argued the cause, and *Joseph Cohen, Charles S. Schnider, John E. Shamberg, Joseph P. Jenkins, Norma Braly, Jacob F. May, Jr.,* and *Frederick K. Cross,* all of Kansas City, were with him on the briefs for appellant.

*Joseph H. McDowell,* of Kansas City, argued the cause, and *Joseph T. Carey,* of Kansas City, was with him on the briefs for appellees.

The opinion of the court was delivered by

FATZER, J.: This was an action to recover damages for personal injuries. The appeal is from an order of the district court sustaining defendants' demurrer to plaintiff's petition. The parties will be referred to as they appeared in the court below.

Plaintiff, an infant seven years of age, commenced this action by and through his mother as next friend on November 27, 1959. The petition described in detail the circumstances under which plaintiff was injured. The physical facts alleged are that plaintiff lives with his parents in an apartment building owned by defendants. They moved into the apartment in March 1959. Prior to moving into the apartment, plaintiff's parents advised defendants that the 2 x 4 wooden railing or banister on the small back porch was inadequate and dangerous for their small children, including plaintiff. Defendants assured them they would make repairs on the porch as soon as their regular workmen were available. Upon that assurance, plaintiff and his parents moved into the apartment and became tenants of defendants. As time went by no repairs were made and plaintiff's parents made repeated requests to defendants to fulfill their promise to repair, but defendants failed to do so. On October 4, 1959, at about 8:30 p. m. while plaintiff was on the small back porch to hang up some diapers, he lost his footing, rolled through or under the banister and fell approximately fifteen feet to the ground, causing serious injuries fully described in the petition.

We first point out that this case does not involve a portion of leased premises retained by the landlord such as a common stairway, halls, porches or lands, since the petition clearly alleged that the only access to the small back porch was from the plaintiff's parents' apartment and that no stairs lead to or from the porch.

It is apparent from the district court's memorandum decision sustaining the demurrer that it relied upon *Murrell v. Crawford,* 102 Kan. 118, 169 P. 561. In reaching its decision the district court noted that plaintiff cited the case of *Waterbury v. Riss & Company,*

169 Kan. 271, 219 P. 2d 673. It further noted that at page 291 this court cited and quoted with approval the Restatement of the Law of Torts, Section 357, which rule seemed to be in conflict with the Murrell decision, but concluded the Waterbury case did not change the law of this state with respect to living quarters as announced in the Murrell case, since the premises involved in the Waterbury case was business property.

In *Murrell v. Crawford,* supra, plaintiff rented a house from defendant upon defendant's promise that the porch would be repaired immediately and put in a safe and tenantable condition. The landlord failed to repair the porch and the tenant was injured when she fell through a rotted portion of it. In denying recovery for personal injury this court recognized that a cause of action against the landlord was created by his breach of the covenant to make repairs, and held that (1) the measure of damages was the difference between the rental value of the premises as they were and what it would have been if they had been put and kept in repair; (2) a breach of the landlord's covenant to repair the dwelling house did not extend to include a liability for personal injury sustained by the tenant in the use of the unrepaired property since loss of life or limb was not a natural and probable consequence which ordinarily and reasonably could be anticipated from a breach of the covenant to make repairs, and (3) where a tenant knew the porch was defective and in need of repair but continued to use it for several months, and was injured thereby, she was guilty of contributory negligence as a matter of law as will bar a recovery for such injuries, notwithstanding the landlord promised to repair the porch but failed to do so.

In *Waterbury v. Riss & Company,* supra, the lessor orally promised the lessee that he would repair the floor of the leased warehouse, but failed to do so. Later, when a deliveryman entered upon the leased premises, the floor gave way and he was killed. In affirming the liability of the landlord, this court said:

". . . The American Law Institute, in its Restatement of Torts, § 357, lays down what appears to be the applicable rule as follows:

" 'A lessor of land is subject to liability for bodily harm caused to his lessee and others upon the land with the consent of the lessee or his sub-lessee by a condition of disrepair existing before or arising after the lessee has taken possession, if

" '(a) the lessor, as such, has agreed by a covenant in the lease *or otherwise,* to keep the land in repair, and

" '(b) the disrepair creates an unreasonable risk to persons upon the land which the performance of the lessor's agreement would have prevented.' (Our emphasis.)" (1. c. 291.)

We quote the comment and illustration of the American Law Institute's Restatement of the Law of Torts, § 357, which are particularly pertinent to the point in question:

"Comment:

"*a. Nature of lessor's duty.* The lessor's duty to repair insofar as its breach subjects him to liability for bodily harm caused to the lessee and those upon the land in his right, is not contractual but is a tort duty based on the fact·that the contract gives the lessor ability to make the repairs and control over them. The lessor is not liable for bodily harm caused even to his lessee by his failure to make the premises absolutely safe. He is liable only if his failure to do so is due to a lack of reasonable care exercised to that end. Like many other tort duties to keep land in safe condition, the lessor's duty to repair is not delegable, and he is liable as fully where the failure to make the premises reasonably safe is due to the negligence of an independent contractor to whom the lessor has entrusted the performance of his contract as he is where it is due to his own personal negligence. Since the duty arises out of the existence of the contract to repair, the contract defines the extent of the duty. Unless the contract stipulates that the lessor shall inspect the premises to ascertain the need of repairs, a contract to keep the interior in safe condition subjects the lessor to liability if, but only if, reasonable care is not exercised after the lessee has given him notice of the need of repairs.

"*Illustration:*

"A leases an apartment in a tenement house to B and agrees to keep the tenement in good internal repair upon notice by the tenant of the necessity of so doing. B notifies A that the ceiling of one of the rooms becomes in need of repairs. The condition is not such as to threaten an immediate fall of the ceiling. While B, C, his wife, and D, a friend, are eating supper in the room, the ceiling falls and causes harm to them. A is liable to B, C and D, if, but only if, the ceiling fell after A has time, subsequent to receiving B's notice, to make the repairs, had he exercised reasonable diligence and care." (pp. 967, 968.)

The following is a portion of an annotation from 163 A. L. R. 300, entitled "Lessor—Promise to repair—Injury":

"At the time the earlier annotations on the present subject were written there was clearly a majority and a minority view as to the liability of a landlord for personal injuries where there was a total failure to perform an agreement to repair the leased premises. The majority rule was that the landlord was not liable. However, there is now a pronounced trend toward the view that the landlord is liable for personal injuries under such circumstances, and the American Law Institute's Restatement of the Law of Torts accepts this view. (See § 357.)

"It now seems improper to say that it is the majority rule that the landlord is not liable for personal injuries, for it is doubtful whether a majority of the courts adhere unqualifiedly to this view."

While the opinion of *Waterbury v. Riss & Company*, supra, does not cite *Murrell v. Crawford*, supra, an examination of the briefs and abstracts on file in the State Library discloses that it was cited and relied upon by an appellant in support of its contention that it was not liable for personal injuries sustained as a result of failure to make the agreed repairs. The fact that this court affirmed the judgment in Waterbury in favor of the decedent's plaintiff and against the landlord and relied upon the Restatement of the Law of Torts, Section 357, as its authority for doing so, compels the conclusion that what was said and held in the Waterbury case is the prevailing law of this state, and *Murrell v. Crawford* was impliedly overruled.

It occasionally happens that the unsoundness of a rule of law is demonstrated by its application to succeeding cases, or by lapse of time and changed conditions of society, and that it should therefore be overruled by the court or altered by the legislature. But the decision in Waterbury is not a maverick in the judicial wilderness. Previous to that decision, the Restatement of the Law of Torts, Section 357, and comment thereon was cited with approval in *Brunsilius v. Farmers & Merchants State Bank*, 143 Kan. 148, 150, 53 P. 2d 476. Failure to recognize the foregoing conclusion that Waterbury announced the prevailing rule of law would require us to say that two rules exist in the law of this state with respect to a landlord's liability for failure to make agreed repairs: One would apply to living quarters of human beings where, as announced in *Murrell v. Crawford*, supra, the measure of damages would not extend to liability for personal injuries sustained by the tenant and others rightfully on the premises with his consent, and the other, as announced in *Waterbury v. Riss & Company*, supra, would pertain to business property for which the lessor would be liable for damage for personal injuries naturally and proximately resulting from his failure to perform the covenant to repair, if the disrepair created an unreasonable risk to persons upon the land which would have been prevented had the agreement been performed. No logical explanation may be made for such a distinction.

We are of the opinion that the recognition and acceptance by this court of the American Law Institute's Restatement of the Law of Torts, Section 357, and its comment and illustration, cited with approval in *Brunsilius v. Farmers & Merchants State Bank*, supra, and as applied in *Waterbury v. Riss & Company*, supra, requires

us to hold that Section 357 is not only applicable to business property, but extends to and includes living quarters leased by a landlord to a tenant. Section 357 makes no distinction; defendants cite no authority for such a distinction, and our research discloses none. Consequently, what was said and held in *Murrell v. Crawford,* supra, insofar as it conflicts with what was said and held in *Waterbury v. Riss & Company,* supra, and with the views expressed in this opinion, is overruled.

Accepting the well-pleaded allegations of the petition as true, which we are required to do, and giving them the reasonable inferences and intendments to which they are entitled, the defendants induced plaintiff's parents to rent the apartment by promising and agreeing to repair the porch banister. They had from March to October to make repairs, but failed to do so. The defendants had notice of the condition of disrepair and had time to make repairs. The inadequate banister created an unreasonable risk to the plaintiff, his parents, and others lawfully upon the premises, since it was reasonable to foresee that a small child might slip and roll under the banister and fall a distance of approximately fifteen feet to the ground which would in all probability result in bodily injury, and had the defendants kept their promise to repair the porch the plaintiff would have been prevented from rolling under the banister and falling to the ground.

The district court recognized that the plaintiff was an infant seven years of age, and it correctly concluded he was not guilty of contributory negligence, nor could negligence on the part of the plaintiff's parents relieve the defendants of liability for personal injuries sustained by plaintiff (*Garcia v. Slater-Breitag Yeamans Motor Co.,* 128 Kan. 365, 278 P. 23; *Farran v. Peterson, Administrator,* 185 Kan. 154, 342 P. 2d 180).

We are of the opinion that the petition alleged a cause of action against the defendants. The district court erred in sustaining the defendants' demurrer. The judgment is reversed.

PRICE, J., dissenting: Ever since 1917 the rule announced in *Murrell v. Crawford,* 102 Kan. 118, 169 Pac. 561, has been the law of this state, and I see no sound or compelling reason why it should now be discarded. And neither do I agree that *Waterbury v. Riss & Company,* 169 Kan. 271, 219 P. 2d 673, overruled it—impliedly or otherwise.

The application of the doctrine of *stare decisis* is essential to the maintenance of a well-ordered system of jurisprudence, making for certainty and stability in the law. Attorneys should be able to advise their clients—and trial courts should be able to adjudicate controversies—in reliance on past decisions of this court rather than be subjected to the uncertainties brought about by changes in personnel of the court.

I would affirm the judgment.

PARKER, C. J., concurs in the foregoing dissent.