No. 46,741

Anne Faye Richardson, *Appellee,* v. Alan Weckworth and Virginia Weckworth, *Appellants*

(509 P. 2d 1113)

Opinion filed May 12, 1973.

*Edward M. Boddington, Jr.,* of Kansas City, argued the cause, and *N. Jack Brown,* of Kansas City, was with him on the brief for the appellants.

*James L. Eisenbrandt,* of Mission, argued the cause, and *George W. Corcoran,* of Mission, was with him on the brief for the appellee.

The opinion of the court was delivered by

Prager, J.: This is an action brought by a tenant against her landlords to recover for personal injuries sustained by the tenant as the result of the tenant falling on a private sidewalk leading to the front door of the rented property. The tenant, plaintiff below and appellee in this court, Anne Faye Richardson, complains that the sidewalk was defective and that the landlords agreed to repair it but failed to do so. This was vigorously denied by her landlords, Mr. and Mrs. Alan Weckworth. After a full trial on the merits a jury returned a verdict in favor of the plaintiff-tenant and judgment was entered on the verdict. The landlords have appealed.

For purpose of this appeal we will assume that the evidence

presented by the plaintiff-tenant is true in view of the jury verdict in her favor. The brief of the landlords contains a resumé of the testimony which has been accepted by the tenant and which will be assumed to be correct on this appeal. Anne Richardson and her husband Larry rented certain residential property from Mr. and Mrs. Weckworth. This property is located at 2515 South 65th Street, Kansas City, Kansas. The Richardsons moved into the house on December 21, 1966, and continued to reside there until September 1971. There was no written lease. The tenancy was on a month-to-month basis with a rental payment of $110 per month. The house is a tri-level. There is a sidewalk leading around the front of the house which turns to provide access to the front door. There are two ways of entrance to the house. One method is by use of the sidewalk and entering the front door. The other method is to go through the garage in back, up two flights of stairs into the kitchen. The entrance through the garage did not provide a reasonable means of access at night since it was necessary to raise the garage door, go across the garage, up one flight of stairs, then turn, go up another flight of stairs and then turn the light on in the kitchen. The route through the garage required a person to ascend 13 or 14 steps in the dark. The entrance to the front of the house consisted of two steps from the driveway down, then along the walk the length of the two bedrooms on the front of the house, down two more steps and a distance of six to eight feet to the front stoop, then into the house. There was a hedge placed along both sides of this path to the front stoop except in certain areas of the sidewalk.

The tenants Richardsons first noticed that the walk was deteriorating some time around January of 1968. The walk was crumbling and the Richardsons' son had to stop shoveling snow off the walk because it looked like it was going to fall to pieces. By December it was full of holes and pockmarks covering an area of approximately six to eight feet. There were holes all over that part of the sidewalk and snow and ice would stand in it. The tenants complained to the landlords about the condition. The tenants testified that the Weckworths told them that they would fix the walk as soon as they could get to it. They did not do it. The tenants complained again and again about the sidewalk. The landlords again and again promised that they would fix it as soon as they could get to it. The landlords complained that they had expenses with other properties which they owned. Mr. Richardson offered

to fix the walk himself if the Weckworths would furnish the materials. They replied that they would as soon as they could afford it. Nothing happened. There was another conversation a month or two later. The last time Anne Richardson spoke to the Weckworths about repairing the walk prior to her accident was on Halloween in October 1968. The evidence disclosed that in addition to face-to-face conversations about the sidewalk there were a number of telephone conversations in which the Richardsons registered their complaints to the Weckworths.

The condition of the sidewalk from the first part of 1968 until December 1968 got worse; it just kept crumbling out until it was broken all the way through. It was full of pockmarks. The pockmarks were described as being of various sizes, some larger than others, some around an inch more or less.

On the evening of December 15, 1968, the Richardsons went Christmas shopping with relatives. They returned to the house around 8:15 p. m. after dark. Anne Richardson was walking toward the house across the crumbling sidewalk. Her heel caught in one of the pockmarks causing her to fall on the walk and suffer personal injuries.

The evidence disclosed that there is a gaslight outside of the house which stays on at all times. This light is around the corner and back behind the hedge 10 to 15 feet from where Mrs. Richardson fell. The light is dim. There is also a porch light which was not turned on that evening. When Mrs. Richardson left home that afternoon in broad daylight she knew she would return in darkness and it was dark when she did return. Mrs. Richardson freely admitted that she had known about the condition of the sidewalk for approximately a year before her fall. She knew it was holey and rough when she walked over it and fell. She and her husband both testified that it was possible to walk on the grass to the left of the sidewalk.

Larry Richardson testified substantially the same as his wife in regard to the condition of the sidewalk and related a number of conversations with the Weckworths. According to Larry Richardson the Weckworths stated that it sure needed to be repaired and they would get to it as soon as they could.

The Weckworths had a different version both as to the condition of the sidewalk and as to their conversations with their tenants. Virginia Weckworth testified that neither she nor her husband in her presence, at any time agreed to repair the sidewalk or to provide

materials for its repair. She described the sidewalk as a little rough, but it did not have any big holes. It looked just like chat, like the surface was broken a little bit. There were no holes in it to her knowledge.

Alan Weckworth was more familiar with the condition of the walk. He stated that the finished layer of concrete at the top for some reason had separated from the layer underneath. It was sloughing off leaving a rough pebbly surface. He estimated the rough and deteriorated area as approximately four feet. He measured the pockmarks and the greatest indentation he could find was one and one-eighth inches. This was not in a jagged edge but in a gradual slope. Mr. Weckworth categorically denied that either he or his wife in his presence had ever agreed in any way to repair the sidewalk or to provide materials for its repair. He admitted that the Richardsons had made complaints about the walk sloughing off. Mr. Weckworth was not concerned about it as a point of danger to anyone walking over it. The substance of his testimony was that the condition of the walk was really not anything for anyone to worry about. He would not expect people using the front entrance to walk around the area on the grass.

The landlords moved for a directed verdict at the close of plaintiff's evidence and again at the close of all of the evidence. These motions were overruled by the trial court. The court instructed the jury and the jury returned a verdict in favor of the tenant and against the landlords. The trial court entered judgment on the verdict. Posttrial motions were filed by the landlords which motions were overruled. Hence the present appeal.

Mr. and Mrs. Weckworth as appellants raise several points of claimed error on this appeal. They first contend that they were entitled to judgment because the evidence showed only slight and inconsiderable defects in the sidewalk which were not actionable as a matter of law. The Weckworths argue that, accepting the testimony of the Richardsons as true, the largest hole or pockmark in the sidewalk did not exceed an inch and one-eighth in depth and therefore there was no actionable defect which could serve as a basis of liability. The appellants rely upon a number of Kansas cases involving defects in public streets including *Roach v. Henry C. Beck Co.*, 201 Kan. 558, 442 P. 2d 21; *Ford v. City of Kinsley*, 141 Kan. 877, 44 P. 2d 255; *Pierce v. Jilka*, 163 Kan. 232, 181 P. 2d 330; *Blankenship v. Kansas City*, 156 Kan. 607, 135 P. 2d 538; and *Taggart v. Kansas City*, 156 Kan. 478, 134 P. 2d 417. They point

out that in all of those cases the dimensions of the claimed defect in the sidewalk exceeded the dimensions of the pockmarks in the case at bar, yet it was held there was no liability as a matter of law. The thrust of appellants' argument is that the same rule should be applied to a defect in a private sidewalk in an action by a tenant against a landlord as is applied to a defect in a public sidewalk where an action is brought by a pedestrian against a city.

In reply to this contention the appellee takes the position that a distinction should be made between cases involving the liability of cities for the condition of public sidewalks and cases where a tenant is injured by a specific, known defect which the landlord has acknowledged and agreed to repair. The tenant further contends that the peculiar facts and circumstances presented in the case at bar distinguish it from cases involving public sidewalks. Here it is undisputed that the only feasible way for the tenant Anne Richardson to enter her home on the night in question was to use the front door which necessitated the use of the sidewalk. Mr. Weckworth himself testified that the normal way to enter the house was to use the walk and he did not expect people to walk around the area. Mrs. Richardson was using the only reasonable way to enter the house which she paid rent for and had the right to use. The tenant also argues that the rule of *Roach* and the other cases cited may be proper where public streets are involved, for the reason that it would place an impossible burden upon the city and taxpayers to repair each and every hole regardless of size located anywhere in the city. Here we are dealing with a specific area, six to eight feet wide and 30 inches long, on a specific sidewalk on rented property which the landlord had known about and had promised to repair for a period of approximately one year.

We agree with the appellee that the rule pertaining to public sidewalks and city streets should not be universally applied in landlord-tenant litigation. In the case at bar there was evidence that the landlords, Mr. and Mrs. Weckworth, admitted that the sidewalk needed repair, thereby acknowledging the defect, and agreed to repair it. We believe that the facts of this case fall squarely within the rule adopted by this court in *Williams v. Davis,* 188 Kan. 385, 362 P. 2d 641, which follows the Restatement of the Law of Torts, § 357. Syllabus ¶ 1 of *Williams* states the rule as follows:

"A covenant to repair leased premises imposes on the lessor a liability in tort to the lessee and others rightfully on the premises for an injury naturally

and proximately resulting from his failure to perform the covenant to repair, if the disrepair creates an unreasonable risk to persons upon the land which would have been prevented had the agreement been performed. . . ."

The legal concepts involved are thoroughly discussed in *Williams* and we do not deem it necessary to discuss them further here. Suffice it to say because of the relationship between the parties of landlord and tenant and because of the rights and obligations arising from that relationship, we find that genuine issues of fact were raised as to whether the condition of the sidewalk created an unreasonable risk to persons upon the land, whether the lessor agreed to repair the condition and whether the injury suffered by the tenant was the natural and proximate result of the failure of the lessor to perform his agreement. These issues were properly submitted to the jury which resolved them in favor of appellee. We find no error in the refusal of the trial court to determine these issues as a matter of law.

The appellants' second point is that the evidence fails to establish that they breached any legal duty owed to the appellee to disclose the condition of the walk since the condition was readily observable to the tenant. We hold this contention without merit in view of the fact that the tenant's theory of liability was based upon a breach of a promise to repair and not upon any breach of a duty of the landlords to disclose the defective condition of the walk. Here the evidence is undisputed that the tenants informed the landlords of the defective condition and there was no contention raised that the landlords were liable because of any failure to advise the tenant of any defects in the walk.

The appellants for their third point contend that, assuming the landlords promised to repair the sidewalk, there was no consideration for any such promise and therefore no binding enforceable duty to repair existed. The defense of lack of consideration was not raised by appellants in the trial court nor is it set forth in the statement of points in the record on appeal. We have held heretofore that the defense of lack of consideration must be raised in the trial court before it can be considered on appeal. ( *Chamberlain v. Monkhouse,* 67 Kan. 836, 72 Pac. 860; *Riffel v. Dieter,* 159 Kan. 628, 157 P. 2d 831.) In view of these decisions and Supreme Court Rule No. 6 ( *d* ), 205 Kan. xxix, we decline to consider the point as to lack of consideration since it is not properly before the court.

Appellants' fourth contention is that the tenant Anne Richardson was guilty of contributory negligence as a matter of law in falling

on the sidewalk when she had known about its condition for approximately a year prior thereto. The existence of contributory negligence is normally an issue for the jury to determine. When it can be said that reasonable men could not reach different conclusions from the same evidence, the issue may be decided as a matter of law, but not otherwise. (*Abston v. Medora Grain, Inc.,* 206 Kan. 727, 482 P. 2d 692.) Here it is undisputed that Mrs. Richardson as a tenant had no other entrance which she could reasonably be expected to use in entering her home. The entrance through the garage certainly presented a more hazardous means of entry during hours of darkness. We cannot say that she was negligent as a matter of law in using the front entrance to the house at the time she fell. A similar contention was made as to the use of a city street known to be defective in *Davis v. City of Holton,* 59 Kan. 707, 54 Pac. 1050. There the court stated as follows:

"Knowledge of a defect in a street on which injury occurs is not always a bar to a recovery. It was held, in *City of Emporia v. Schmidling* (33 Kan. 485, 6 Pac. 893), that even a knowledge that it was somewhat defective would not debar one from the use of the street, nor would such use with notice that it was unsafe or out of repair necessarily constitute contributory negligence. . . ." (p. 709.)

We have found no other Kansas cases in point. Cases from other jurisdictions hold that where the landlord's failure to repair has made it impossible for the tenant to use a portion of the premises without exposing himself to bodily harm, the tenant is not negligent in using the defective area unless he acts unreasonably and that such an issue is normally a question for the jury to determine. See for example *Keene v. Willis,* 128 Vt. 187, 260 A. 2d 371; *Mariotti v. Berns,* 114 C. A. 2d 666, 251 P. 2d 72; and *Sacks v. Pleasant,* 253 Md. 40, 251 A. 2d 858. Here the question of tenant's contributory negligence was an issue of fact which was for the jury to determine and which it did determine in her favor. We find no error in submitting that issue to the jury.

The appellants' final point is that the trial court erred in not defining the phrases "hazardous and dangerous conditions" and "unreasonable risk" as used in its instructions to the jury. We cannot fault the trial court in its ruling that these words are readily understandable to a Kansas jury and that no further explanation or definition was necessary.

For the reasons set forth above we find that the appellants' contentions of error are without merit and that this case was submitted

to the jury on instructions properly stating the issues to be determined.

The judgment is affirmed.

SCHROEDER, J., dissenting.