No. 32,456

Rachael Bogart, *Appellee,* v. Melvina A. Lyman, *Appellant.*

(51 P. 2d 918)

Opinion filed December 7, 1935.

*Dale Kidwell, Harold A. Zelinkoff* and *Thomas P. J. Hasty,* all of Wichita, for the appellant.

*L. C. Gabbert* and *James A. Conly,* both of Wichita, for the appellee.

The opinion of the court was delivered by

Smith, J.: This was an action for damages for personal injuries alleged to have been sustained in a stairway leading to an apartment rented from defendant. Judgment was for plaintiff. Defendant appeals.

Defendant owned a building in Wichita known as 1805 and 1807 East Douglas avenue. This building consisted of two storerooms on the ground floor and three apartments on the second floor, two of these apartments being known as 1805 East Douglas. These were two back apartments, and there was one stairway from the street by which these apartments could be reached. The apartment with which we are concerned, known as 1807 East Douglas, was the front apartment, and there was a stairway leading from the street to it. This stairway led to this apartment only. It could be used only in going out of or entering the apartment at 1807.

Some time about the early part of September, 1932, plaintiff rented apartment No. 1807 from defendant. There was a handrailing on the right wall on entering the stairway. This handrail ran from the street level all the way up the stairs. There was an electric light over the stairway. This light was on the meter for the apartment occupied by plaintiff. This light was controlled by a switch within the apartment occupied by plaintiff and also one at the bottom of the stairs. There was a door opening into the street at the bottom of the stairway and also one at the head of the stairway opening into the apartment. At the time the apartment was rented to plaintiff a key was given to her for the door at the top of the stairs but none was given her to the street door. It does not appear from this record that there ever had been a key to this door.

On the night of September 27, 1932, as plaintiff was coming downstairs and was about three or four steps from the bottom the handrail gave way and she fell. She was injured. This action followed.

The petition alleged the handrail was inadequately fastened to the wall and was incapable of sustaining the weight placed upon it by one using it in descending the stairs; that defendant had negligently kept the stairway in an unsafe condition and that this unsafe condition was without the knowledge of plaintiff, and defendant knew or by the exercise of ordinary care could have known of the unsafe condition of the stairway, and that by reason of the careless maintenance of the stairway plantiff was precipitated down the stairway and injured.

The answer of defendant contained a general denial and a plea of contributory negligence on the part of defendant. The jury found for the plaintiff. Judgment was entered accordingly. At the

close of the evidence of plaintiff defendant demurred to it. This demurrer was overruled and the ruling is one of the errors urged.

At the outset of the case it appears that all parties are agreed that a landlord is under no duty to repair unless he has covenanted to do so or unless the repair should have been made to some part of the building control of which the landlord has kept to himself or which is used by more than one tenant in common with others. *McGinley v. Alliance Trust Co.*, 168 Mo. 257, 66 S. W. 153, 56 L. R. A. 334, cited by plaintiff, so holds. There the court said:

"Ordinarily, when repairs are needed on a house in the possession of a lessee, he may make them; but no one else can enter the house to make repairs, without his permission, not even the landlord." (p. 263.)

In *Looney v. McLean*, 129 Mass. 33, 37 Am. Rep. 295, it was held:

"Where a portion of a building is let, and the tenant has rights of passage-way over staircases and entries in common with the landlord and the other tenants, there is no such leasing as will exonerate the landlord from all responsibility for the safe condition of that portion of which he still retains control, and which he is bound to keep in repair; as to such portion, he still retains the responsibilities of a general owner to all persons, including the tenants of his building." (p. 35.)

This was not a common stairway as the term is generally used. It was used only as a means of entering and leaving the apartment occupied by plaintiff. No other person would have any use of it except for that purpose. If this particular apartment should be abandoned for some reason there would be no reason for this stairway ever being used.

Plaintiff does not urge otherwise, but argues that defendant retained control of the stairway when she was renting plaintiff the apartment. The following testimony is relied on:

"Q. 1807. Now, when you rented this property from Mrs. Lyman, at the time she gave you the keys, was there anything said about the stairways? A. I asked her for the keys of the front door, which was downstairs, and she said there was no key to that; the only key that I had was to the upstairs; that that was a public entrance—her entrance to my apartment.

"Q. What was said about who had control of this stairway? A. Presumably, I suppose, she had. She didn't give me the key to it.

"Mr. ZELINKOFF: Your honor, we object to that as a conclusion.

"THE COURT: Sustained. Stricken out.

"Q. What, if anything, further was said? A. She told me there was no key to it; that she had the right to the stairway; that I had the key to my apartment upstairs—entrance to my door after you entered the stairs was the only key; she had the right of way to the stairway.

"Q. She would have the right of way to the stairway? Now, this front door that you speak of, was that down on the street at the foot of the stairway? A. Right on the street.

"Q. Just what did Mrs. Lyman say to you about that stairs? A. She told me there was no key to the part to the stairs—to the stairway; that the key she gave me was to the upper stairway, that that was of use for her to come to my apartment or other uses.

"Q. The stairway? A. The stairway; yes.

"Q. Was for her use and other people's use? A. Yes, sir; I never had a key."

It will be seen that, assuming the above testimony to be true, which we must do in considering a demurrer to the evidence, all defendant told plaintiff was that the stairway was for defendant to use if at any time she wished to call upon plaintiff or for such other people to use as wished to call upon plaintiff. This did not constitute a retention by defendant of control over this stairway so as to charge defendant with the duty of keeping it in repair. To constitute such retention of the use there must be use in common with other tenants or with the occupancy of the building by other tenants.

In *Miller v. Mutual Mortgage Co.*, 112 Conn. 303, 152 Atl. 154, 75 A. L. R. 157, the facts were that defendant owned a house containing two apartments, one located on the first floor and one on the second floor. The first floor was occupied by plaintiff and her family and the second by another family. Each of the two apartments had a separate front entrance, but there was a common door opening onto a landing. From this landing a flight of steps led up to a hall on the level of the first-floor apartment, which hall was used by the tenants of both apartments. Stairs led up to a landing on a level with the second-floor apartments. The tenants of the first-floor apartment had no occasion to use the stairs leading up to the second floor for any purpose other than to visit tenants of that floor, as any member of the public might do. Plaintiff went from her apartment to visit tenants on the second floor. Part of the landing gave way and she was injured. The court held that the stairway was not a common approach but a part of the second-floor apartment, in control of that tenant, and that no portion of it was retained in the control of the landlord. The court said:

"A consideration entitled to much weight is the situation of the stairway with reference to the several apartments. . . . If the stairway be so situated as not naturally to be regarded as intended for a common use by the various tenants, but only for use by one of them, this tends to signify that the parties

intended it to be annexed to the premises included in the lease of such tenant. . . . The use actually made of the stairway and the circumstances attending it are also evidence of intention. . . . The finding is that there was no occasion for the first-floor tenants to use these stairs in connection with their tenancy. Such occasion, obviously, was confined to the tenants of the second floor, and they assumed all the care, such as cleaning, which, so far as appears, this portion of the premises received. No use of the stairs by the first-floor tenants, as such, in connection with their apartment, is disclosed. The conclusion that the control thereof was in the tenants of the second floor instead of the defendant landlord is warranted by the subordinate facts." (pp. 305, 306.)

To the same effect is *Brauner v. Snell*, 35 Idaho 243, 205 Pac. 558, also *Finkelstein v. Schlanowsky*, 135 N. Y. Supp. 783, 76 Misc. 500, 25 A. L. R. 1282.

There is no evidence in this record of any covenant to repair on the part of the defendant nor does the plaintiff argue there was any such covenant. The case was tried throughout on the theory that liability of the defendant depended on the stairway where the injury occurred being a common one, and on defendant having retained control of it. We hold that the record does not contain any evidence whatever of this, but rather proved that the stairway in question was a part of the apartment occupied by plaintiff.

The judgment of the trial court overruling the demurrer of defendant to the evidence of plaintiff is reversed with directions to enter judgment for defendant.