No. 45,786

Jesus Vieyra, *Appellant,* v. Engineering Investment Company, Inc., *Appellee.*

(473 P. 2d 44)

Opinion filed July 17, 1970.

*Payne Ratner, Jr.,* of Ratner, Mattox, Ratner, Ratner & Barnes, of Wichita, and *William R. Cole,* of Weinlood, Cole, Oswalt & Shaffer, of Hutchinson, argued the cause and were on the brief for appellant.

*Michael E. Chalfant,* of Branine & Chalfant, of Hutchinson, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

Fromme, J.: This is an action for personal injuries. A freight elevator broke and fell more than two floors to the bottom of the elevator shaft. The plaintiff and another employee of the lessee of the premises were using the elevator. The heels of plaintiff were fractured. Plaintiff sued the lessor (owner) of the premises.

This appeal is from a judgment for the defendant. Judgment was entered by the court notwithstanding a verdict for plaintiff.

Certain preliminary facts should be noted.

The offending elevator was located in a warehouse building owned by the defendant, Engineering Investment Company, Inc.

The elevator and the building were leased to The Barnett Warehouse Company, Inc., under a written lease. The provision of that lease which is pertinent to the present controversy reads:

"5. Tenant agrees to keep the interior portion of the premises in good repair, ordinary wear and tear and damage caused by the elements or any casualty excepted, and to replace all glass broken during said term with glass of like kind and quality. Landlord, however, agrees to keep in repair the roof and external portions of said building and to make necessary repairs, not caused by neglect, carelessness or misuse by Tenant, to the permanent plumbing, lighting fixtures, dock facilities and elevator now in said building. All repairs or replacements made necessary by neglect, carelessness or misuse of the said building, fixtures and improvements therein, and docking facilities, shall be made by Tenant."

Under this provision the lessee (tenant) agreed to repair the interior portions of the building. The lessor (owner) agreed to repair the roof and external portions of the building. The lessor was to make necessary repairs to the elevator unless caused by neglect, carelessness or misuse. The lessee was to make repairs to the elevator caused by neglect, carelessness or misuse.

No provision of the lease stipulated that the lessor (owner) should inspect the premises to ascertain the need for repairs. No provision of the lease reserved to the lessor (owner) any right of possession or control of the premises or portions thereof. The building and elevator were leased exclusively to the lessee. The elevator was not used by multiple tenants.

Just prior to the accident the plaintiff and another employee of the warehouse company (lessee) had loaded the elevator with bread trays. The elevator was operating and had reached the second floor. A bearing housing cover came loose and fell into the elevator shaft. The gears which controlled the operating cables disengaged because of the loosened housing cover. The elevator fell to the bottom of the shaft. The bearing cover secured the operating gears. These gears were on top of an I-beam which extended across the top of the elevator shaft, the headhouse. The cover was originally attached to the beam by four bolts. One of these bolts was found at the bottom of the elevator shaft after the accident. It was sheared off. The other three bolts were completely gone and have not been found. The elevator had been in operation since 1926 or 1927. The building was constructed at that time.

A foreman of the lessee (tenant) testified he made regular in-

spections of the elevator and headhouse about every two weeks. He greased the operating parts and tightened loose bolts. He used a ladder at the top of the headhouse to make his inspections but he did not check the bolts which secured the bearing cover. Some repairs have been made to the elevator cables and electrical wiring in past years.

The procedure which has been followed in discovering the need and in making repairs to the elevator is as follows: The foreman of lessee made bi-weekly inspections. If he noticed a loose bolt he tightened it. He greased the elevator. If repairs were needed the manager of the lessor was called. The manager would then come to the warehouse and inspect the parts needing repair or replacement. This was done in the company of an employee of the lessee. The manager would then call in a repair company after verifying the need. No repairs requested have ever been refused.

The manager of lessor made no inspections of the elevator without a request by the lessee. He was aware that this elevator had been in operation since 1926 or 1927. No request for repairs to the elevator had been made for at least one year prior to the accident..

The basis for the judgment is set forth in the court's findings as follows:

". . . [T]he landlord defendant had no notice of any defect in the elevator, either actual or constructive, and as a matter of law is not liable for the plaintiff's injuries by virtue of the contract to make necessary repairs to said elevator."

The plaintiff-appellant contends that the defendant (lessor) was under a duty to inspect and discover all dangerous defects. Plaintiff further states that this duty was imposed by the covenant to repair in the lease.

To support his contentions plaintiff cites *Waterbury v. Riss & Company*, 169 Kan. 271, 219 P. 2d 673, *Williams v. Davis*, 188 Kan. 385, 362 P. 2d 641, and similar cases from other states.

In *Waterbury* a truck driver was killed when the flooring in a warehouse buckled and gave way. Sometime prior to the accident the sagging floor was called to the attention of the lessor who was fully aware of the dangerous condition which existed. The lessor orally agreed at that time to repair this known dangerous condition of the floor but failed to do so.

In *Williams* a seven year old boy fell through a defective railing on the upper deck of a back porch. Before moving into the apart-

ment the boy's parents had advised the lessor that the railing was inadequate and dangerous. The lessor agreed if the tenants would move into the premises he would make the necessary repairs but he failed to do so.

In those cases there were agreements by the lessors (owners) to repair specific defects or hazards. The dangerous conditions were known by the lessors. The possible consequences of failure to repair were evident and should have been appreciated by lessors. Their failure to make the repairs within a reasonable time created liability in tort.

Those cases are not controlling under the facts of the present case.

When a duty on a lessor arises from a general covenant to repair contained in a lease and no right of access or control of that portion of the premises is reserved, the lease defines the extent of the duty imposed. Unless such lease stipulates that lessor shall inspect the premises to ascertain the need for repairs, the covenant to make necessary repairs to the interior of the premises in the exclusive control of lessee subjects the lessor to no liability until the lessee has given him notice of the need for repairs and the lessor thereafter fails to exercise reasonable care and diligence in making the repairs.

The above rule has been recognized by this court. At page 388 of the opinion in *Williams v. Davis*, supra, this court quoted from the American Law Institute's Restatement of the Law of Torts, § 357 as follows:

". . . Since the duty arises out of the existence of the contract to repair, the contract defines the extent of the duty. Unless the contract stipulates that the lessor shall inspect the premises to ascertain the need of repairs, a contract to keep the interior in safe condition subjects the lessor to liability if, but only if, reasonable care is not exercised after the lessee has given him notice of the need of repairs."

Other Kansas cases in this general area of the law are *Brunsilius v. Farmers & Merchants State Bank*, 143 Kan. 148, 150, 53 P. 2d 476; *Hinthorn v. Benfer*, 90 Kan. 731, 136 Pac. 247; *Upham v. Head*, 74 Kan. 17, 85 Pac. 1017; *Mann v. Fuller*, 63 Kan. 664, 66 Pac. 627 and *Moore v. Parker*, 63 Kan. 52, 64 Pac. 975.

The requirement in the rule that the lessee must have given the lessor notice of the need for repairs disposes of the argument that constructive knowledge should be imputed to the lessor because of the age of the elevator. Constructive notice is insufficient. The rule stated is discussed fully in an annotation in 78 A. L. R. 2d 1238. It has the approval of a growing number of jurisdictions.

Plaintiff cites some cases in which the lessors have reserved specific rights of access to the premises for the purpose of repair. Other cases are cited which relate to injuries occurring in a portion of a building reserved by the lessor for the use of the public or of multiple tenants. (See *Trimble v. Spears*, 182 Kan. 406, 320 P. 2d 1029.) Those cases are not controlling here.

In the present case the lease, which contained the covenant to make necessary repairs, did not reserve to the lessor specific rights of access for the purpose of inspection and repair. The elevator was not one reserved by the lessor for the use of the public or of multiple tenants. The lease did not stipulate the lessor was to inspect the premises to ascertain the need for repairs. The lessor had no notice of any defective condition. The lessor had not previously repaired the elevator in a faulty manner. Under the rule stated in this case constructive knowledge of a need for repairs will not be imputed to the lessor. Therefore no liability could be imposed upon the lessor (defendant) arising from this covenant to make necessary repairs.

What has been said disposes of all points raised except one. Plaintiff has indicated the evidence was sufficient to sustain the jury verdict under the doctrine of *res ipsa loquitur*.

The doctrine of *res ipsa loquitur* is a rule of evidence and means "the thing speaks for itself". It does no more than obligate the defendant to go forward with evidence. (*Rupe v. Smith*, 181 Kan. 606, 313 P. 2d 293; *Waddle v. Brodbeck*, 176 Kan. 583, 272 P. 2d 1066.) Three elements are required for the doctrine to apply to a particular case: (1) The instrumentality or thing causing the injury must have been within the exclusive control of the defendant; (2) The occurrence must be of such kind or nature as ordinarily does not occur in the absence of someone's negligence and (3) The occurrence must not have been due to the contributory negligence of the plaintiff. (*Blue Stem Feed Yards v. Craft*, 191 Kan. 605, 611, 383 P. 2d 540.)

The first of the three elements listed above is not present here. The elevator which caused plaintiff's injuries was not within the exclusive control of the defendant (lessor). The doctrine does not apply in the present case.

The judgment for defendant is affirmed.