MARIAN COOK *et al.*, Plaintiffs-Appellants, *v.* UNIVERSITY PLAZA *et al.*, Defendants-Appellees.

Second District   No. 81-111

Opinion filed October 6, 1981.

Charles L. Fierz, of Sycamore, for appellants.

Russell E. Burns and Robert P. Carlson, both of Burns and Carlson, of De Kalb, for appellees.

Mr. PRESIDING JUSTICE SEIDENFELD delivered the opinion of the court:

In this appeal we consider the applicability of the statute providing payment of interest on security deposits to a tenant (Ill. Rev. Stat. 1979, ch. 74, pars. 91-93), to particular contracts. The parties to the agreements are the plaintiffs, the residents of University Plaza as a class, who entered into residence hall contracts with University Plaza and its general partners, defendants, a privately owned university dormitory which serves students of Northern Illinois University in DeKalb. Plaintiffs appeal from the dismissal of their class-action suit. The defendants' motion was sustained on the basis that the statute is inapplicable because no tenant-

landlord relationship has been created by the contracts and thus that no cause of action was stated.

The individual contracts with the students are entitled "Residence Hall Contract Agreement." The introductory paragraph states that the agreement governs the use of the University Plaza facilities and services by the resident. In clause I the dormitory agrees to furnish accommodations and services, including basic furniture, carpeting and draperies, local telephone service, cleaning service, social and recreational facilities, and parking facilities. Clause III requires a $50 security deposit and spells out the rights that the resident has in that deposit. University Plaza reserves the right to cancel the contract for default, although the resident has no right to cancel once it has accepted the agreement. If the resident has not vacated the premises at the end of seven days following a written notice of intent to cancel the contract, University Plaza may take possession of the premises and remove the resident. University Plaza provides meal service for the residents. It also reserves the right to make assignments of space, to authorize or deny room and roommate changes and to require the resident to move from one room to another. There is also a provision that the dormitory is closed and meals are not served during Thanksgiving and spring recess as well as during semester breaks; and that no one is allowed to remain in the residence hall during these stated periods or beyond the established academic year closing date.

Clause IV states:

> "Notwithstanding anything to the contrary which may herein be contained, expressly, impliedly or otherwise, it is specifically understood and agreed by and between the parties hereto, that it is not the intention of the parties hereto to create a landlord-tenant relationship, and that the intention hereof is strictly contractual in nature; for bed and board, ancillary service, the use of certain recreational facilities, and participation in student social programs promoted at University Plaza, all of which are for the most part in concert with others. The resident may not assign any rights hereunder and may not sublet the room assigned."

■■ Whether a contract is a lease or a license is not to be determined from the language that the parties choose to call it but from the legal effect of its provisions. *Illinois Central R.R. Co. v. Michigan Central R.R. Co.* (1958), 18 Ill. App. 2d 462, 473-74. See also *Holladay v. Chicago Arc Light & Power Co.* (1894), 55 Ill. App. 463, 466.

In *Holladay*, a contract, referred throughout as a lease of the right to run electric wires under the sidewalks of certain buildings, was held not to be a lease but a mere license. In reaching that conclusion, the court reasoned that an instrument which merely gives to another the right to "use premises for a specific purpose, the owner of the premises retaining the

possession and control of the premises, confers no interest in the land and is not a lease, but a mere license." (55 Ill. App. 463, 466-67.) In *Illinois Central R.R. Co.*, the court held that an agreement between two railroads to share their track and railroad station rights was a license, not a lease, and concluded that where the railroad shared the use of the tracks and terminal areas there was no transfer of exclusive possession sufficient to create a lease. It noted that "a leasehold requires that the lessee's possession be more than merely coextensive with the lessor; it must be exclusive against the world and the lessor." (18 Ill. App. 2d 462, 482.) However, "there may be a reservation of a right to possession by the landlord for purposes not inconsistent with the privileges granted to the tenant." 18 Ill. App. 2d 462, 477. See also *Urban Investment & Development Co. v. Rothschild & Co.* (1975), 25 Ill. App. 3d 546, 550.

In *In re Application of Rosewell* (1979), 69 Ill. App. 3d 996, the court considered whether agreements between the City of Chicago and certain individuals under which the individuals were permitted to operate city owned parking garages or lots constituted leases or licenses. The court held that the essence of a lease was transfer of possession (69 Ill. App. 3d 996, 1000-01), while a license is "an agreement which merely entitles one party to use property subject to the management and control of the other party" (69 Ill. App. 3d 996, 1001). Thus, it concluded that since the city retained the right to control how the parking lots were operated the agreement constituted a license, even though the city surrendered exclusive possession of the lots to the parking lot operators. In *People v. Chicago Metro Car Rentals, Inc.* (1979), 72 Ill. App. 3d 626, the issue was whether an agreement between the City of Chicago and a car rental agency, which permitted the agency to operate a rent-a-car business at O'Hare airport, constituted a lease or a license. In finding that the agreement constituted a lease the court noted that the document was written using traditional terms; that it contained all of the essential requirements of a lease, including a definite agreement as to the extent and bounds of the leased property; and that the agreement granted Metro exclusive possession of a designated service area and designated counter space amounting to a particular number of square feet, legally described and diagramed in the agreement. 72 Ill. App. 3d 626, 629.

■■ While the agreement before us contains certain aspects normally associated with leases, a definite and agreed term and a definite and agreed price of rental and manner of payment (see *Metro*, at 629), we conclude that it lacks the essential requirement of being a definite agreement as to the extent and bounds of the property to be used. The fact that the students may be moved during the term from room to room at the will of the contracting party is the principal feature of the agreement which we find persuasive in our determination that the parties did

not intend to enter into a landlord and tenant relationship since the agreement failed to pass a possessory interest in specific property.

■■ The question remains as to whether the legislature intended the statute on security deposits to apply to dormitories which provide bed and board to students. Section 3 of the statute excludes only public housing units from the application of the act. (Ill. Rev. Stat. 1979, ch. 74, par. 93.) However, parties are only covered by the statute if the agreement between the residents and the dormitory can be considered a lease. We find nothing in either the legislative history of the act or in its terms which would support the view that the legislature intended to include security deposits paid by students in dormitories in which they reside without reference to whether their agreement is a license or a lease.

We would note that there appears to be no public policy which would prevent the legislature from enacting a statute which would require that interest be paid on deposits made by persons in the class of the plaintiffs or others similarly situated. However, we conclude that the legislature has not done so and that the remedy in these circumstances is within the legislative domain.

The judgment is therefore affirmed.

Affirmed.

REINHARD and HOPF, JJ., concur.