No. 60,682

PAULINE BURCH, *Appellant,* v. UNIVERSITY OF KANSAS, KANSAS BOARD OF REGENTS, and STATE OF KANSAS, *Appellees.*

(756 P.2d 431)

Opinion filed June 3, 1988.

*Kevin L. Diehl,* of Eugene B. Ralston & Associates, P.A., of Topeka, argued the cause, and *Roger A. Riedmiller,* of the same firm, was with him on the briefs for appellant.

*Mary D. Prewitt,* special assistant attorney general, argued the cause, and *Robert T. Stephan,* attorney general, was with her on the brief for appellee.

The opinion of the court was delivered by

PRAGER, C.J.; This is an action brought by the plaintiff, Pauline Burch, a 67-year-old grandmother, against defendants, the University of Kansas, the Kansas Board of Regents, and the State of Kansas, for personal injuries suffered when she fell in an unlighted stairwell located in Lewis Hall on the University of Kansas campus. The district court sustained defendants' motion for summary judgment and the plaintiff appealed. The Court of Appeals affirmed in a short unpublished memorandum opinion filed January 7, 1988. The Supreme Court granted plaintiff's petition for review.

In awarding summary judgment to defendants, the trial court filed a memorandum decision setting forth certain undisputed

facts which essentially are as follows: On April 24, 1985, plaintiff, Pauline Burch, went to Lewis Hall to visit her granddaughter, Brandi Bengert. Plaintiff's only purpose was to visit her granddaughter and, at the time, Brandi did not know that plaintiff was coming to visit her. When she arrived at Lewis Hall, plaintiff inquired at the main desk as to the whereabouts of her granddaughter and was directed down a stairwell to a music room to find her. Plaintiff entered the stairwell, and, as she proceeded down the stairs, she realized that she could not see the steps. She continued, feeling her way down the steps, and, at the last step, fell and suffered injuries to her leg. The granddaughter was a resident of Lewis Hall during the fall of 1984 and the spring of 1985. She rented a room in accordance with a written agreement with the University. Brandi was present the night of her grandmother's fall and was familiar with the stairwell. The stairwell in question was used extensively by residents, student monitors, resident directors, and employees of the residence hall, since the stairwell was conveniently located near the music room and laundry area.

After plaintiff suffered her fall, Kansas University police officers had to use flashlights to locate her due to the darkness in the stairwell. From the evidence developed on discovery, the trial court found that security monitors are required to check the entire hall at night, and part of their job is to check the lighting in Lewis Hall. It is a policy of the University to allow visitors for the resident students and to encourage the students to have their parents and grandparents visit them. The evidence indicated that plaintiff was not advised that an elevator went to the bottom floor; however, she was aware that there was an elevator in the building. Defendants, in their answer, denied that the stairwell was improperly lighted but contended that, assuming plaintiff's contentions to be true, the alleged failure to maintain the lighting would not rise to the level of gross and wanton negligence. The defendants contend that the plaintiff was a licensee and could not recover for her injury absent a showing of gross and wanton negligence on the part of those in charge of Lewis Hall.

Based upon the findings of fact set forth above, the district court adopted the following conclusions of law:

(1) From the facts presented, plaintiff had the legal status of a

licensee upon defendants' premises and the law concerning landlord/tenant relationships is not applicable.

(2) The active negligence exception to the duty ordinarily owed to a licensee, which was recognized in *Bowers v. Ottenad,* 240 Kan. 208, 729 P.2d 1103 (1986), is not applicable in this case for the reason that the claimed negligence of the defendants would not constitute "active" negligence as defined in *Bowers.*

(3) Assuming all of plaintiff's allegations concerning the claimed negligence of the defendants to be true, such conduct does not rise to the level of wanton or reckless misconduct as a matter of law.

On appeal, plaintiff raises four issues:

(1) Whether the contract between the granddaughter and the University created a lessor/lessee relationship, thus placing a duty on the University to use ordinary reasonable care in maintaining the common area of the dormitory used by students and visitors.

(2) Whether the plaintiff had the status of an invitee, because of the University policy to encourage students to have visitors.

(3) Whether any negligence on the part of the University constituted active negligence for the purpose of the active negligence exception stated in *Bowers v. Ottenad,* when the University failed to replace a burned-out light bulb in the stairwell.

(4) Whether the actions of the University constituted wanton or reckless misconduct when its employee directed the plaintiff down the stairwell at a time when it was not adequately lighted.

We agree with counsel for the parties that the primary issue in the case is the nature of the legal duty owed by the University, as the operator of Lewis Hall, toward the plaintiff, as a visitor on the premises to see her granddaughter, a resident student of the building. Stated simply, the controlling question is whether the University owed plaintiff the duty of reasonable care to keep the stairwell and other common areas of the building reasonably safe for the protection of student occupiers and visitors or whether its only obligation was not to wantonly and recklessly injure them.

As noted heretofore, the trial court held as a matter of law that the contract between the University and Brandi Bengert did not create a landlord/tenant or lessor/lessee relationship and therefore plaintiff's legal status was that of a licensee to whom the

University, as the operator of the residence hall, owed only the duty not to be wantonly or recklessly negligent. In determining the legal status of the plaintiff and the duty of the defendants it would be helpful at the outset to review the applicable Kansas cases.

The basic legal principle involved was discussed in depth in *Borders v. Roseberry*, 216 Kan. 486, 491, 532 P.2d 1366 (1975). *Borders* involved the liability of a landlord for personal injuries suffered by a social guest of a tenant as the result of a slip and fall on the leased premises. Defendant Roseberry was the owner of a single-family, one-story residence located in Osawatomie, Kansas. Defendant leased the property on a month-to-month basis to a tenant, Rienecker. Just prior to the time the tenant took occupancy of the house, the defendant landlord had work performed on the house including the remodeling of the house and installation of a new roof. In repairing the house, the repairmen removed the roof guttering from the front of the house but failed to reinstall it. The landlord knew the guttering had been removed by the workmen, intended to have it reinstalled, and knew that it had not been reinstalled. The roof line on the house was such that, without the guttering, the rain drained off the entire north side of the house onto the front porch steps and, in freezing weather, water would accumulate and freeze on the steps.

Both the landlord and tenant knew that the guttering had not been reinstalled and knew that ice would accumulate. The tenant had complained to the landlord about the lack of guttering and the resulting icy steps. Plaintiff Gary Borders arrived at the premises at the invitation of the tenant for dinner. It was agreed that Borders' status was that of a social guest of the tenant. As Borders was leaving the house, he slipped and fell on the steps as a result of the ice and received personal injuries. The case was tried to the court without a jury. It entered judgment in favor of the defendant based upon a conclusion of law that a landlord of a single-family house is under no legal obligation or duty to a social guest, a licensee of his tenant, to repair or remedy a known condition whereby water dripped onto the front steps causing plaintiff to slip and fall. The plaintiff appealed.

In *Borders*, this court recognized that traditionally the law in

this country has placed upon the lessee, as the person in possession of the land, the burden of maintaining the premises in a reasonably safe condition to protect persons who come upon the land. The general rule is that there is no liability on the part of a landlord, either to a tenant or to others entering the land, for defective conditions existing at the time a lease becomes effective.

The court in *Borders* then recognized that the general rule of nonliability has been modified by a number of exceptions which have been created as a matter of social policy. The six recognized exceptions are as follows:

1. Undisclosed dangerous conditions known to lessor and unknown to the lessee.

2. Conditions dangerous to persons outside the premises.

3. Premises leased for admission of the public.

4. Parts of land retained in lessor's control which lessee is entitled to use.

5. Where the lessor contracts to repair.

6. Negligence by lessor in making repairs.

The opinion in *Borders* discusses each one of the exceptions and points out that Kansas cases have recognized and applied those sections of the Restatement (Second) of Torts which adopt them.

The court in *Borders* held that none of the exceptions were applicable to the peculiar facts presented in the case. In the present case, the only exception to the general rule which could be applicable is exception No. 4, which places upon a lessor an affirmative obligation and duty to exercise reasonable care to inspect and make reasonably safe those parts of the premises retained in the lessor's control which the lessee and others lawfully upon the land with the consent of the lessee are entitled to use. This exception is covered in the Restatement (Second) of Torts §§ 360 and 361 (1964) which provide as follows:

"§ 360. Parts of Land Retained in Lessor's Control Which Lessee is Entitled to Use

"A possessor of land who leases a part thereof and retains in his own control any other part which the lessee is entitled to use as appurtenant to the part leased to him, is subject to liability to his lessee and others lawfully upon the land with the consent of the lessee or a sublessee for physical harm caused by a dangerous condition upon that part of land retained in the lessor's control, if the lessor by

the exercise of reasonable care could have discovered the condition and the unreasonable risk involved therein and could have made the condition safe."

"§ 361. Parts of Land Retained in Lessor's Control but Necessary to Safe Use of Part Leased

"A possessor of land who leases a part thereof and retains in his own control any other part which is necessary to the safe use of the leased part, is subject to liability to his lessee and others lawfully upon the land with the consent of the lessee or a sublessee for physical harm caused by a dangerous condition upon that part of the land retained in the lessor's control, if the lessor by the exercise of reasonable care

"(a) could have discovered the condition and the risk involved, and

"(b) could have made the condition safe."

The Kansas cases have recognized a legal duty on the part of a lessor to keep common areas safe for tenants and their guests. In *Hinthorn v. Benfer*, 90 Kan. 731, 733, 136 Pac. 247 (1913), this court stated:

"Where a portion of the building is let and the tenant has rights of passageway over stairs and entries in common with the landlord and other tenants, the landlord is bound to exercise reasonable care to render the halls and stairways safe for the uses which he invites others to make of them."

In *Given v. Tobias*, 137 Kan. 58, 19 P.2d 472 (1933), this court recognized the same rule when a tenant sued her landlord for injuries incurred when she fell down an unlighted stairway maintained by the landlord. The rule was also recognized in *Brunsilius v. Farmers & Merchants State Bank*, 143 Kan. 148, 53 P.2d 476 (1936), and *Bogart v. Lyman*, 142 Kan. 758, 51 P.2d 918 (1935).

The plaintiff in this case relies upon our decision in *Trimble v. Spears*, 182 Kan. 406, 320 P.2d 1029 (1958). In *Trimble*, the court expanded the general rule requiring a lessor to exercise reasonable care to maintain common areas to include a duty to third persons invited by a tenant to the premises. The court stated:

"Liability is based upon the obligation of the landlord to the tenants of different parts of the same building in reference to the halls, stairways, doors and et cetera of which he has kept in possession for their common use. His liability to persons other than the tenants is based upon the privity of those persons with the tenant who occupies a portion of the premises. In the use of the stairs, hallways, passageways, walks and the like over which the landlord retains control for the benefit of the tenants in common the persons in privity with any tenants are regarded as invitees on the premises either by express or implied invitation and the landlord owes them a duty to exercise ordinary care to keep those portions of the premises in safe condition." 182 Kan. at 413.

The court made it clear that the duty of a lessor to exercise

reasonable care "extends to persons expressly or impliedly invited by the tenant. It also extends to all of those who have lawful occasion to visit a tenant for social purposes." 182 Kan. at 414. The rule of liability is not unlimited, however. The landlord must be shown to have had actual or constructive knowledge of the defect causing the injury. Further, the responsibility extends only to common areas.

The basic issue in this case is whether the rule recognized in *Borders* and *Trimble* is applicable under the particular facts of the case. To determine that issue, we must first closely examine the pertinent facts. The basic agreement between Brandi Bengert and the University of Kansas is set out in a "Residence Hall Contract." Under the contract, the University guarantees space, meals, and other services in a residence hall, but does not guarantee a specific room in a specific hall. Payments under the contract are denominated installments, not rent. The University reserves the right to "assign, re-assign, and adjust occupancy of rooms," but room and hall changes cannot be made during the semester without the agreement of the student. The contract directs that the area leased to a student cannot be *subleased.* The contract provides that students do not have an absolute right to have guests or visitors, and that overnight guests must be registered at the hall desk. Specific visiting hours and visiting locations for guests of the opposite sex are set out. Students who violate University regulations or withdraw from school may find their contracts unilaterally cancelled.

In determining the nature of the contract in this case, the trial court noted that the contract had some similiarities to a lease. There is a definite and agreed term, a definite and agreed price, and a specified manner of payment. The contract, however, does not use the word "lease," "rent," "landlord," or "tenant." In holding that the common area exception under the law was not applicable, the trial court stated in its memorandum opinion:

"Plaintiff initially claims that the body of law concerning landlord/tenant and lessor/lessee relationships should apply to this case. This contention is based on the fact that the accident occurred in a building used for housing university students. In reviewing the facts in the record, including the rental contract between the university and plaintiff's granddaughter, Brandi Bengert, it appears that there are several elements of the agreement which are normally found in

leases, a definite and agreed term and a definite and agreed price and a specified manner of payment.

"However, the agreement fails to pass a possessory interest in specific property because the contract provides: 'The University has the right to assign, reassign and adjust occupancy of rooms . . . Rooms and hall changes may be made during the semester if agreed upon in advance by the student involved and the hall directors.' . . .

"It appears that the contract lacks the essential requirements of being a definite agreement as to the extent and bounds of the property to be used which is necessary to create a landlord/tenant relationship. See *Dutton v. Dutton*, 122 Kan. 640, 253 P. 553 (1927); *Misco Industries, Inc. v. Board of Sedgwick County Comm'rs*, 235 Kan. 958, 685 P.2d 866 (1984); *Cook v. University Plaza*, 100 Ill. App. 3d 752, 427 N.E.2d 405 (1981)."

In adopting its position, the trial court strictly construed the contract entered into between Brandi Bengert and the University and required a traditional, common-law lease in order for the common area exception to be applicable.

Obviously, the trial court was very technical in its application of the legal principles involved and in holding that the plaintiff, as an implied invitee and guest of her granddaughter, was not protected under the common area exception discussed heretofore. We concede that the contract between Brandi and the University of Kansas was not technically a lease in the traditional sense. In our judgment, however, it is important for the court to look at the contractual relationship of the parties in the light of modern conditions in deciding whether the common area exception is to be applied in a particular case.

In *Steele v. Latimer*, 214 Kan. 329, 521 P.2d 304 (1974), the question presented was whether the implied warranty of habitability was applicable to a contract for the rental of urban residential property. The plaintiff rented a three-bedroom house owned by defendant Latimer. The agreement was oral and there was no written lease. *Steele* is important here because of the discussion in the majority opinion as to the nature of a lease and the lessor/lessee relationship. In the opinion, the court stated:

"Usages, customs and patterns in housing practices have undergone dramatic change since the common law rules respecting landlord-tenant relationships were developing in feudal England. Dwelling habits fashioned under the agrarian atmosphere of those far-off times are hardly suitable for congested urban settings. Under the tenurial system a lease was primarily considered to be the conveyance or transfer of an interest in realty. The value to the tenant lay mainly

in the land itself, the buildings being considered for the most part as incidental to the lease. Dwellings were ordinarily of simple construction, without today's modern conveniences and mechanical gadgets, and could easily be kept in repair by the tenant himself. (*Marini v. Ireland,* 56 N.J. 130, 265 A.2d 526; *Kline v. Burns,* 111 N.H. 87, 276 A.2d 248.)

"The feudal concept that a lease is simply the sale or conveyance of an interest of land [citation omitted] has given way to the more realistic view that a lease is essentially a contract. In *Dutton v. Dutton,* 122 Kan. 640, 253 Pac. 553, this court has said:

" 'Landlord and tenant is a phrase used to denote the familiar legal relation existing between the lessor and lessee of real estate. The relation is contractual and is constituted by a lease or agreement therefor of lands for terms of years, from year to year, for life or at will. . . .' (pp. 641, 642.)" p. 333.

In their brief, defendants cite *Misco Industries, Inc. v. Board of Sedgwick County Comm'rs,* 235 Kan. 958, 685 P.2d 866 (1984). That case did not involve the liability of a lessor of land under the common area exception. The only issue was whether, under the factual situation, payment of a mortgage registration tax was required. The court, in substance, recognized that a lessor/lessee relationship may arise even though the traditional elements of a common-law lease are not present. The court pointed out that a lease is both an executory contract and a present conveyance. A tenant is one who has the temporary use and occupancy of leased property belonging to another. To determine whether an instrument is a lease, or creates a relation other than that of lessor and lessee, the intention of the parties, as ascertained from the instrument itself, will govern. The fundamental rule in the construction of an agreement is to ascertain the intent of the parties, and in such construction the courts look to the language employed, the subject matter, and the surrounding circumstances. *Dutton v. Dutton,* 122 Kan. 640, 253 Pac. 553 (1927). Thus, the court held that a contract may be a lease where the parties so intended, even though the usual provisions of a common-law lease are not contained in the instrument.

In the Restatement (Second) of Torts § 355 (1964), the term "lessor of land" is defined in comments *a* and *b,* as follows:

"*a.* The words 'lessor of land' denote one who has leased land for a definite or indefinite period, no matter how great or small, by a written or parol lease, irrespective of whether a statute of fraud requires the lease to be in writing. The lease may be created by words or other conduct expressing consent to the lessee's possession. The conduct expressing consent may consist merely in a

failure to terminate a lease or eject the tenant, or to object to the presence of one who has entered without the lessor's consent but not adversely to him."

"*b.* The rule stated in this Section includes a sublessee and all licensees of the lessee or sublessee, irrespective of whether they are invitees or licensees. It includes persons who are privileged to enter the land, irrespective of the lessee's consent, for the protection of their own interests or the interests of the public."

Thus, in applying the common area exception under Restatement (Second) of Torts §§ 360 and 361, the term "lessor of land" is to be construed to include any contractual relationship, written or oral, where the owner of property leases land and retains under his possession and control certain areas of the land which various renters or tenants are entitled to use as appurtenant to the part leased to them.

This liberal approach was taken by this court in *Albanese v. Edwardsville Mobile Home Village, Inc.,* 215 Kan. 826, 529 P.2d 163 (1974), where Syllabus ¶ 1 states:

"Where the owner of premises lets portions thereof to different tenants or residents and expressly or by implication reserves other parts such as areaways, walkways, recreational areas, playgrounds, etc. for their common use it becomes his duty to use reasonable care to keep safe the parts reserved by him, and should he be negligent in such respect and injury results by reason thereof to a tenant or resident, or to a person there in his right, the owner will be liable provided the injury occurs while such parts of the premises are being used in the manner intended."

One of the important issues in the case was whether the common area exception should be applied to the owner or operator of a mobile home facility who rented space to various mobile home owners. The court held that it should be so applied, stating that it was aware of no case which had applied the landlord/tenant rule of liability to the owner or operator of a mobile home facility, but it could see no reason why the rationale of the rule would not govern a trailer or mobile home court situation such as was presented in that case.

We have carefully considered the issue and hold that, in the application of the common area exception under §§ 360 and 361 of the Restatement (Second) of Torts, the lessor/lessee relationship should be liberally construed to include factual situations where there is no traditional, common-law lease, but where land has been leased for a definite or indefinite period, no matter how great or small, by either a written or parol lease, and irrespective

of whether the statute of frauds requires the lease to be in writing, as noted in comment *a* of § 355 of the Restatement. The lessor/lessee relationship may be created by words or other conduct expressing consent by the lessor to the lessee's possession.

We are convinced that when the owner of property leases or rents a portion thereof to a number of tenants and retains possession and control of certain common areas to be used by all tenants, that factual situation creates a duty on the part of the owner of the property to maintain those common areas in a reasonably safe condition and to exercise reasonable care to carry out that duty.

In view of this holding, it follows that the district court erred in sustaining defendants' motion for summary judgment on the basis that the common area exception did not apply, because there was no landlord/tenant or lessor/lessee relationship present. In view of the holding on this issue, it is not necessary to consider the other points raised by the plaintiff on the appeal. If there is a trial, the issues to be determined are whether the defendants violated a legal duty to exercise due care in the maintenance of the common areas of Lewis Hall, whether the plaintiff was negligent, and the percentage of causal fault to be assignable to the parties.

The judgment of the district court and the judgment of the Court of Appeals are reversed and the case is remanded to the district court with instructions to consider the issues raised as to the comparative fault of the parties.