Gerald L. ROLLO, Plaintiff,

v.

CITY OF KANSAS CITY, KANSAS, and
Friendly Frank's Distribution, Inc.,
Defendants.

Civ. A. No. 93–2120–GTV.

United States District Court,
D. Kansas.

June 7, 1994.

Dennis L. Horner, Horner and Duckers, Chartered, Kansas City, KS, J. Bradley Pace, James C. Wirken, King, Burke, Hershey, Farchmin & Schlomann, and Michael Burke, Kansas City, MO, for Gerald L. Rollo.

Maurice J. Ryan, Alicia Talbert, City of Kansas City, Kan.—Legal Dept., Kansas City, KS, for City of Kansas City, Kan.

James E. Switzer and Keith U. Martin, Payne & Jones, Chtd., Overland Park, KS, for Friendly Frank's Distribution, Inc.

## MEMORANDUM AND ORDER

VAN BEBBER, District Judge.

This is a negligence action arising out of injuries suffered by plaintiff Gerald Rollo when he fell down an elevator shaft at the warehouse space leased by Friendly Frank's from the City of Kansas City, Kansas. Plaintiff was inspecting the plumbing at the premises in preparation for submitting a bid to put in a shower for Friendly Frank's. In the Pretrial Order, plaintiff claims that his accident was proximately caused by the negligence of Friendly Frank's and the lessor of the space, the City of Kansas City, Kansas. Plaintiff also alleges what appears to be a claim predicated on a negligence *per se* theory based on the city's failure to comply with the Uniform Building Code's requirements regarding the inspection and repair of elevators.

This case is now before the court on Defendant Kansas City's Motion for Summary Judgment (Doc. 32). The defendant city argues that it is entitled to summary judgment as a matter of law on the negligence claim because it owed no duty to the plaintiff on which a claim for negligence could be premised. The city also argues that as a matter of law it cannot be liable to the plaintiff under a theory of negligence *per se.* Both plaintiff and separate defendant Friendly Frank's have responded and oppose the motion. For the reasons stated in this memorandum and order, the motion is denied.

### I. SUMMARY JUDGMENT STANDARDS

In deciding a motion for summary judgment, the court must examine any evidence tending to show triable issues in the light most favorable to the nonmoving party. *Bee v. Greaves,* 744 F.2d 1387, 1396 (10th Cir. 1984), *cert. denied,* 469 U.S. 1214, 105 S.Ct. 1187, 84 L.Ed.2d 334 (1985). A moving party is entitled to summary judgment only if the evidence indicates "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A genuine factual issue is one that "can reasonably be resolved only be a finder of fact because [it] may reasonably be resolved in favor of either

party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. This burden may be discharged by "showing" that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). Once the moving party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party, who "may not rest on mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson,* 477 U.S. at 256, 106 S.Ct. at 2514. Thus, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Id.*

## II. FACTUAL BACKGROUND

The following facts are either uncontroverted and established by the parties in accordance with D.Kan.Rule 206(c) or are facts viewed in the most favorable light to the nonmoving party:

Friendly Frank's and the City of Kansas City, Kansas, entered into a warehouse lease agreement dated March 1, 1992, for the premises located at Public Levee Building 220D. The space was leased to Friendly Frank's for the purpose of wholesale distribution of comics, books, and cards. Friendly Frank's occupied Building 220D from the time it took possession in late February or early March, 1992, and continuously thereafter, including the day when plaintiff was injured.

The lease agreement provides that the city shall maintain the elevator in good working order, and that the city has the right to enter the leased premises to make inspections, and may halt operation of the elevator when necessary to make repairs or inspections. It also provides that Friendly Frank's is to promptly notify the city of any repairs needed to the elevator. At the time the premises were turned over to Friendly Frank's, the city made no inspection of the elevator.

On April 28, 1992, plaintiff Rollo had an appointment with Friendly Frank's manager, Debbie Christiansen, to inspect the premises for the purpose of bidding on the job of installing a shower into the leased space. Plaintiff was aware of the elevator's existence when he visited Friendly Frank's on April 28, 1992. On April 30, 1992, plaintiff Rollo returned to Friendly Frank's to further inspect the plumbing in preparation for his bid. While looking at the ceiling to inspect distance, plaintiff took a step backwards and fell into the elevator shaft. He fell one floor down and landed on top of the elevator which was being operated by Debbie Christiansen. He suffered a fracture of his right femur.

At the time of plaintiff's fall, Debbie Christiansen was operating the elevator without its safety gate in its proper upright position. The elevator is equipped with an "interlock device" which is intended to prevent operation of the elevator when the safety gate is not in the upright position in front of the entry to the elevator and the elevator shaft. The elevator was not working properly at the time of plaintiff's fall in that it could be used without the safety gate in an upright position.

The elevator was installed in 1939. The 1937 Safety Code for elevators, dumb-waiters, and escalators was approved by the American Standard Association in July, 1937, and required an interlock device on an elevator to be in working order. The 1937 Code was not adopted in Kansas City, Kansas, until 1946. In 1988 the city adopted a version of the Uniform Building Code which governs the maintenance and inspection of both new and existing elevators.

None of the Friendly Frank's employees notified the city of any need for repair to the elevator, and it is controverted whether any Friendly Frank's employees or the city knew the elevator was not working as it was intended to work.

## III. LANDLORD'S DUTY OF CARE

In its motion for summary judgment, the city argues that plaintiff's negligence claim against it must fail because under Kansas law and the uncontroverted facts of this case,

the city owed no duty to plaintiff upon which a negligence claim can be based. Plaintiff contends that the city, as owner and landlord of the commercial building where he was injured, owed him a duty to keep the elevator in a reasonably safe condition.

Under Kansas law, in order to submit a triable negligence claim, plaintiff must establish that: (1) the city owed a duty to him, (2) a breach of that duty occurred, (3) plaintiff sustained damage, and (4) the damage was caused by the breach of duty. *Tersiner v. Union Pacific Railroad Co.*, 740 F.Supp. 1519, 1524 (D.Kan.1990). In the present case, plaintiff contends that the city's duty arises from its responsibility as landlord of the leased premises.

■■■ The general rule in Kansas is that there no liability rests upon a landlord, either to a tenant or to others entering the property, for defective conditions existing at the time of the lease. *Borders v. Roseberry*, 216 Kan. 486, 488, 532 P.2d 1366 (1975). The lessee, as the person in possession of the property, has the burden of maintaining the premises in a reasonably safe condition to protect persons who come upon the property. *Burch v. University of Kansas*, 243 Kan. 238, 241–42, 756 P.2d 431 (1988). Kansas courts have held that the landlord's duty of care owed to a tenant's guest is not controlled by licensee-invitee distinctions, but by the common-law rule that the landlord owes no duty to guests except in certain specific situations. There are six recognized exceptions to the no-duty rule. *Borders* 216 Kan. at 488, 532 P.2d 1366. Those exceptions include: (1) undisclosed dangerous conditions known to lessor and unknown to the lessee; (2) conditions dangerous to persons outside of the premises; (3) premises leased for admission of the public; (4) parts of land retained in lessor's control which lessee is entitled to use; (5) where lessor contracts to repair; and (6) negligence by lessor in making repairs. *Id.* at 488–92, 532 P.2d 1366.

In the present case, plaintiff argues that the city's liability flows from exceptions (3), (4), and (5).[1] The court will address each of these three exceptions in turn.

### *Premises Leased for Admission of the Public*

■■■ Kansas recognizes the exception to the no-duty rule for landlords in cases where land is leased for a purpose which involves the admission of the public. *Id.* at 490, 532 P.2d 1366. Section 359 of the Restatement (Second) of Torts sets out the exception as follows:

**Section 359. Land Leased for Purpose Involving Admission of Public**

A lessor who leases land for a purpose which involved the admission of the public is subject · to liability for physical harm caused to persons who enter the land for that purpose by a condition of the land existing when the lessee takes possession, if the lessor

(a) knows or by the exercise of reasonable care could discover that the condition involves an unreasonable risk of harm to such persons, and

(b) has reason to expect that the lessee will admit them before the land is put in safe condition for their reception, and

(c) fails to exercise reasonable care to discover or to remedy the condition, or otherwise to protect such persons against it.

Restatement (Second) of Torts § 359 comment (e) indicates that a landlord is subject to liability under this exception only for those persons admitted by the lessee for the purpose for which the land is held open. The landlord "is not subject to liability to invitees of the lessee who come upon the premises for a business purpose other than that for which they are open to the public, as in the case of a truck driver delivering provisions to a restaurant." *Id.*

In light of comment (e)'s restriction on the landlord's liability under the public admission

---

**1.** In its memorandum in opposition to the motion for summary judgment, defendant Friendly Frank's also argues that the city is liable based on exception (1), for conditions known to the lessor and unknown to the lessee. In light of the court's conclusions regarding the other exceptions as set forth in this memorandum and order and because Friendly Frank's is not a plaintiff in this action, the court does not address this issue.

exception set out in section 359, the court concludes that in the present case the city would have no liability under this exception for the injuries suffered by plaintiff Rollo. Plaintiff was not a comic book distributor or retailer on the premises of Friendly Frank's to view inventory; he was a plumber who came on the premises in order to prepare an estimate for plumbing work. Although there are no Kansas cases directly holding that the exception in section 359 does not confer liability on landlords for injuries to repairmen or delivery persons, in *Zinn v. Hill Lumber & Investment Co.*, 176 Kan. 669, 673, 272 P.2d 1106 (1954), the Kansas Supreme Court quoted with favor a previous version of the comment to section 359 concerning a landlord's liability to members of the public invited upon the premises for the purpose for which the land is held open. Commentators and at least one court in another jurisdiction have also maintained that liability extends only to those invitees who enter for the purpose for which the place was leased. *Horstman v. Glatt*, 436 S.W.2d 639, 643 (Mo.1969); W. Page Keeton et. al., *Prosser and Keeton on the Law of Torts* § 63, at 439 & n. 71 (5th ed. 1984).

Plaintiff argues that a conclusion that liability does not exist for repairmen and delivery persons "devalues the lives of individuals who could reasonably be expected to visit the leased premises." Unfair as the result may seem to plaintiff, it is clear that the drafters of the section 359 did not intend to confer liability on landlords for workmen or delivery persons under this exception to the non-duty rule. There is no basis for this court to conclude that Kansas's application of section 359 would not comport with the drafters' intent as to the scope of liability under the section.

### Where Lessor Contracts to Repair

■ Section 357 of the Restatement 2d of Torts confers liability on a landlord who has contracted to make a repair on leased property but has failed to exercise reasonable care in performing the contractual duty. Like section 359, this restatement section has also been adopted as Kansas law. *See Bor-*

*ders,* 216 Kan. at 491–92, 532 P.2d 1366. Section 357 reads as follows:

**Section 357.  Where Lessor Contracts to Repair.**

A lessor of land is subject to liability for physical harm caused to his lessee and others upon the land with the consent of the lessee or his sublessee by a condition of disrepair existing before or arising after the lessee has taken possession, if

(a) the lessor, as such, has contracted by a covenant in the lease or otherwise to keep the land in repair, and

(b) the disrepair creates an unreasonable risk to persons upon the land which the performance of the lessors agreement would have prevented, and

(c) the lessor fails to exercise reasonable care to perform his contract.

The terms of the lease define the extent of the duty imposed. Restatement (Second) of Torts § 357 cmt. (d).

■ In *Vieyra v. Engineering Investment Co.*, 205 Kan. 775, 778, 473 P.2d 44 (1970), the Kansas Supreme Court applied the section 357 exception to a case involving an injury caused by a malfunctioning elevator and held that unless a covenant in the lease required the lessor to inspect the premises, the landlord was not liable for any harm caused by the disrepair until the lessee gives the lessor notice of the need for repairs. In *Vieyra,* the terms of the lease obligated the lessor to make necessary repairs, not caused by the tenant's neglect, to the plumbing, lighting, dock facilities, and elevator in the leased premises. *Id.* at 776, 473 P.2d 44. Additionally, the tenant in *Vieyra* made regular inspections of the elevator and reported needed repairs to the lessor. *Id.* at 777, 473 P.2d 44.

The present case offers a scenario somewhat different from that of the *Vieyra* case. The terms of the lease involved here are different from those in *Vieyra,* and read as follows:

11.  Elevator.  In those premises leased to Lessee which are serviced by an elevator, Lessor shall maintain said elevator in good working order.  Lessor shall have the right to enter upon the leased premises

to make inspections, repairs, alterations, replacements, or improvements to the elevator and Lessee shall allow any city or other governmental inspector to make inspections as provided by law. Lessor reserves the right to stop service of the elevator, when necessary, by reason of accident, or emergency, or for repairs, alterations, replacements or improvements, which in the judgment of Lessor are desirable or necessary to be made, until said repairs, alterations, replacements or improvements shall have been completed. Lessor shall have no responsibility or liability for failure of operation of the elevator during said period or when prevented from so doing by laws, orders, or regulations of any federal, state, county or municipal authority or by strikes, accidents, or by any other causes whatever beyond Lessor's control.

Lessee covenants that Lessee and all of Lessee's employees, invitees and agents shall operate the elevator in a safe and careful manner complying with all weight limit and other operating instructions. Lessee shall be responsible for any and all damages caused to said elevator or the premises by the intentional abuse or operations of said elevator in violation of the weight limit or any other operational instruction.

Lessee covenants that Lessee will give Lessor prompt notice of any malfunctions, failures or needed repairs or maintenance of the elevator.

Defendant argues that under *Vieyra*, the city faces no liability for plaintiff's injuries because it had not been notified of any defect in the elevator and it was under no duty to inspect the elevator to discover defects. Plaintiff and Friendly Frank's argue that *Vieyra* is distinguishable from the present case and that the terms of the lease obligated the city to inspect as well as repair the elevator. Moreover, Friendly Frank's notes that it had just taken possession of the premises a few weeks before plaintiff's injury, and that the Friendly Frank's employees had no way of knowing that the elevator was not in proper working order.

The court concludes that the facts of the present case are distinguishable from *Vieyra* and the city may have liability for plaintiff's injury based upon its covenant to repair the elevator. Instrumental to this conclusion are the provisions in the lease which not only obligate the city to maintain the elevator in good working order, but also confer upon the city a right of entry to inspect or repair the elevator and a right to stop operation of the elevator when the city deems it necessary. The lease agreement in the *Vieyra* case included no such provisions.

█ Based upon these lease terms, the landlord's contractual obligation for maintenance of the elevator goes beyond the obligation to repair set out in the *Vieyra* contract. Although there is no direct contractual obligation under which the city must periodically inspect the elevator, the court concludes that the contract is at best ambiguous on the issue of inspections. Therefore, the lease agreement must be construed against its drafter, the city. *See Penalosa Cooperative Exchange v. Farmland Mutual Ins. Co.*, 14 Kan.App.2d 321, 321 syl. 6, 789 P.2d 1196 (1990) (drafter of contract must suffer the consequences if he does not make the terms clear). In light of the city's right of entry for purposes of inspection and its right to stop operation of the elevator, the court does not construe the lease provision requiring the tenant to notify the city of any needed repair to be the exclusive mechanism which triggers the city's duty to maintain the elevator. It will be a question for the trier of fact to determine whether the city is liable for plaintiff's injury under Restatement (Second) § 357 or whether the city exercised reasonable care to keep the elevator in safe condition.

As an additional matter, the court notes that plaintiff contends that a genuine issue of material fact exists concerning the city's knowledge of the defective condition of the elevator. Plaintiff argues that the elevator in the premises leased to Friendly Frank's had in the past suffered malfunctions and that the city had a long history of problems with the elevators in the public levee buildings and that the city therefore had actual notice that the elevator was in need of repair. If plaintiff can prove that the city had actual knowledge of a problem with the elevator's

safety mechanism, the city would have been contractually obligated to repair it. The city denies any knowledge of the elevator's defective condition. This genuine issue of material fact creates an alternative ground from denial of the city's motion for summary judgment on the issue of liability for conditions that a landlord contracts to repair.

*Parts of Land Retained in Lessor's Control which Lessee is Entitled to Use*

■ Closely tied to the issue of the applicability of Restatement (Second) of Torts § 357 in the present case is the issue of whether the exception set out in Restatement (Second) of Torts § 360 applies. Section 360, which is often called the "common areas" exception, places upon a lessor "an affirmative obligation and duty to exercise reasonable care to inspect and make reasonably safe those parts of the premises retained in the lessor's control which the lessee and others lawfully upon the land with the consent of the lessee are entitled to use." *Burch,* 243 Kan. at 242, 756 P.2d 431 (quoting Restatement (Second) of Torts §§ 360 and 361).

Kansas courts have long recognized the duty of a lessor to keep common areas safe for tenants. *See e.g., Hinthorn v. Benfer,* 90 Kan. 731, 733, 136 P. 247 (1913). The common areas exception has been applied to stairways, hallways, and other portions of a lessor's property over which multiple tenants have rights of passage. *Burch v. University of Kansas,* 243 Kan. 238, 242–44, 756 P.2d 431 (1988) (citing *Borders,* 216 Kan. at 491, 532 P.2d 1366; *Given v. Tobias,* 137 Kan. 58, 19 P.2d 472 (1933); *Hinthorn,* 90 Kan. at 733, 136 P. 247). The Kansas Pattern Jury Instruction applicable to a landlord's duty for "reserved parts" is written in terms of areas reserved for the common use of different tenants. PIK 12.31. There are no Kansas cases extending the "common areas" exception to areas within a tenant's premises over which the landlord has retained control. *Compare* Prosser, *supra* at p. 442.

■ Because there are no Kansas cases extending the exception in section 360 to areas within a tenant's leased premised over which the lessor retains control, and because the language of section 360 itself is set out in terms of areas "appurtenant to the part leased" to the tenant, the court concludes

that there is no basis for liability on the part of the city under this exception.

*IV. NEGLIGENCE PER SE LIABILITY*

In the second part of its motion for summary judgment, the city argues that plaintiff should not be able to recover against it on a theory of negligence *per se.* This issue was briefed extensively by the parties. Although the complaint does not include a claim termed "negligence *per se*" against the city, the pretrial order includes among plaintiff's factual contentions and legal theories a claim based on the city's failure to comply with ordinances concerning the inspection and maintenance of elevators. Therefore, the court will address the negligence *per se* issue.

■ Negligence *per se* is a term of art which refers to a violation of a specific requirement of a law or ordinance. *Watkins v. Hartsock,* 245 Kan. 756, 761, 783 P.2d 1293 (1989). "The distinction between 'negligence' and 'negligence per se' is the means and method of ascertainment, in that the former must be found by a factfinder from the evidence, while the latter results from violation of the specific requirement of law or ordinance; and the only fact for the determination of the factfinder is the commission or omission of the specific act inhibited or required." *Id.* To recover on a negligence *per se* theory in Kansas, the plaintiff must establish that the defendant (1) violated a statute, ordinance or regulation, and (2) that the violation caused plaintiff's damages. *See Plains Transport of Kansas, Inc. v. King,* 224 Kan. 17, 25, 578 P.2d 1095 (1978). Additionally, plaintiff must "establish that an individual right of action for injury arising out of the violation was intended by the legislative body that passed the ordinance." *Kerns v. G.A.C. Inc.,* 255 Kan. 264, 875 P.2d 949 (1994). In deciding whether an individual right exists, the court must ask whether the statute at issue creates a duty to individuals. *Schlobohm v. United Parcel Serv., Inc.,* 248 Kan. 122, 125, 804 P.2d 978 (1991). Ordinances enacted to protect the public generally do not create a duty to individuals injured as a result of the violation of those ordinances. *Kansas State Bank & Trust Co. v. Specialized Transp. Servs., Inc.,* 249 Kan. 348, 371, 819 P.2d 587 (1991).

In the present case, plaintiff contends that negligence *per se* may be established by the city's violation of its building codes. Specifically, plaintiff points to the city's adoption of the Uniform Building Code, 1988 edition, including its appendix. Section 5108 of the code's appendix provides that it applies to "new and existing installations of elevators ... requiring permits therefore and providing for the inspection and maintenance of such conveyances." Section 5113(a) of the appendix provides that the "owner shall be responsible for the safe operation and maintenance of each elevator ... and shall cause periodic inspections, tests, and maintenance to be made on such conveyances as required in this section." Section 5113(b) provides that inspections and tests of passenger and freight hydraulic elevators shall be made at intervals no longer than six months.

The city argues that the building code provisions relied upon by plaintiff do not create any private right of action, but instead simply are designed to protect the general public welfare. The city also contends that the codes are not designed to protect a particular class of persons. The court disagrees with the city's argument and concludes that the building code provisions at issue in the present case are analogous to the building code provisions discussed in *Schlobohm v. United Parcel Serv., Inc.*, 248 Kan. 122, 804 P.2d 978 (1991), and *Noland v. Sears, Roebuck & Co.*, 207 Kan. 72, 483 P.2d 1029 (1971). In *Schlobohm*, the court phrased the negligence *per se* issue as whether the code provision at issue "was intended to protect the public at large or was intended to provide protection for a special class of which [plaintiff] was a member." 248 Kan. at 125, 804 P.2d 978. The *Schlobohm* court concluded that the provision in the building code which limited the differential between the floor and the threshold of a doorway to one inch was to protect persons like Schlobohm who enter and exit doorways. The *Noland* court held that a violation of the building code provision at issue in that case—which concerned stairway handrails—could constitute negligence *per se*. The building code provisions in the present case appear designed to protect persons who ride on elevators or who walk around elevator shafts. Thus, the building code provisions at issue in *Schlobohm* and

*Noland* are analogous to those in the present case.

The *Schlobohm* court also found instructive a provision in the building code specifically stating that civil liability is not relieved by the code's enactment. *Id.*, 248 Kan. at 127, 804 P.2d 978. The building code at issue in the present case also contains such a provision in section 202(f). For reasons similar to those relied upon by the *Schlobohm* court, this court concludes that liability may be predicated on a negligence *per se* theory in the present case. Whether or not plaintiff's injuries were proximately caused by any non-compliance with the building code provisions concerning elevators will be a question of fact for trial. The city's motion for summary judgment on this issue is denied.

IT IS, THEREFORE, BY THE COURT ORDERED that Defendant Kansas City's Motion for Summary Judgment (Doc. 32) is denied.

Copies of this order shall be mailed to counsel of record for the parties.

**IT IS SO ORDERED.**